# Illinois Official Reports

## Appellate Court

---

### *People v. Glover*, 2017 IL App (4th) 160586

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL A. GLOVER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0586 |
| Rule 23 order filed<br>Modified opinion<br>upon denial of<br>rehearing filed | July 12, 2017<br><br>September 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 12-CF-1913; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and James Ryan Williams, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and James C. Majors, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.<br>Justices Harris and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1　　In November 2012, the State charged defendant, Michael A. Glover, with nine felony offenses allegedly committed while he was released on bond from Coles County. In December 2013, defendant pleaded guilty to one count of unlawful possession of a stolen vehicle, a Class 2 felony (625 ILCS 5/4-103(a)(1), (b) (West 2010)). In January 2014, defendant filed a motion to withdraw his guilty plea. After this court twice remanded the cause for strict compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016), newly appointed counsel filed another motion to withdraw defendant's guilty plea. In August 2016, the trial court denied the motion to withdraw the guilty plea.

¶ 2　　Defendant appeals, arguing (1) this court should allow him to withdraw his guilty plea because (a) his erroneous belief that he faced 60 years' imprisonment was objectively reasonable and (b) trial counsel erroneously advised him that he faced 60 years' imprisonment, thereby rendering ineffective assistance of counsel and precluding a knowing and voluntary plea; and (2) the circuit clerk improperly imposed numerous fines.

¶ 3　　We affirmed in part and vacated in part. On August 2, 2017, defendant filed a petition for rehearing pursuant to Illinois Supreme Court Rule 367 (eff. July 1, 2017), asking this court to reconsider in light of *Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1958 (2017), which was issued after the completion of briefing in this case. We now modify our decision upon denial of defendant's petition for rehearing to address *Lee*. For the reasons set forth below, we affirm in part and vacate in part.

¶ 4　　　　　　　　　　　　I. BACKGROUND

¶ 5　　In November 2012, the State charged defendant with the following felony offenses allegedly committed while out on bond from Coles County: (1) home invasion with injury intentionally caused to Sara Stephenson (count I) and Steve Martin (count II), Class X felonies (720 ILCS 5/12-11(a)(2), (c) (West 2010)); (2) criminal damage to property, a Class 4 felony (720 ILCS 5/21-1(1)(a), (2) (West 2010)) (count III); stalking where he knew or should have known his course of conduct would cause a reasonable person to fear for his or her safety, a Class 4 felony (720 ILCS 5/12-7.3(a), (b) (West 2010)) (count IV); (3) stalking where on at least two occasions he followed or placed Stephenson under surveillance and transmitted a threat of bodily harm, Class 4 felonies (720 ILCS 5/12-7.3(a-3), (b) (West 2010)) (counts V and VI); (4) aggravated stalking where he knew or should have known his course of conduct would cause a reasonable person to fear for his or her safety and he caused Stephenson bodily harm, a Class 3 felony (720 ILCS 5/12-7.4(a)(1), (b) (West 2010)) (count VII); (5) aggravated fleeing, a Class 4 felony (625 ILCS 5/11-204.1(a)(4), (b) (West 2010)) (count VIII); and (6) unlawful possession of a stolen vehicle, a Class 2 felony (625 ILCS 5/4-103(a)(1), (b) (West 2010)) (count IX). In each count, the State alleged that any sentence imposed would be mandatorily consecutive to any sentences imposed in Coles County case Nos. 12-CF-236, 12-CF-329, and 12-CF-355. Defendant was eligible for extended-term sentencing on counts III through IX based on his 2008 conviction of a Class 2 felony. The record shows defendant was also charged with domestic battery, a Class A misdemeanor (720 ILCS 5/12-3.2(a)(1), (b) (West 2010)) (count X), and battery, a Class A misdemeanor (720 ILCS 5/12-3(a)(1), (b) (West 2010)) (count XI).

¶ 6      In January 2013, the trial court held a hearing on defendant's desire to proceed *pro se*. The court admonished defendant regarding the charges against him and the minimum and maximum penalties he faced. With respect to counts I and II, the court informed defendant that the Class X felonies required a mandatory period of incarceration of 6 to 30 years, which would be served mandatorily consecutively to any sentences of incarceration imposed in Coles County case Nos. 12-CF-236, 12-CF-329, and 12-CF-355, and a 3-year period of mandatory supervised release. Upon inquiry, the State indicated it believed sentences on counts I and II were mandatorily consecutive to each other. Accordingly, the court informed defendant, if he were convicted of both counts I and II, the sentences imposed would be mandatorily consecutive. Ultimately, defendant did not waive his right to counsel and proceeded to a guilty plea hearing represented by Diana Lenik.

¶ 7                                                 A. Guilty Plea

¶ 8      On December 23, 2013, defendant pleaded guilty to count IX—unlawful possession of a stolen vehicle. Prior to hearing the factual basis and accepting defendant's guilty plea, the trial court informed defendant unlawful possession of a stolen vehicle was a Class 2 felony and, because of defendant's prior Class 2 felony conviction, the charge carried a minimum sentence of 3 years' imprisonment and a maximum sentence of 14 years' imprisonment, followed by a 2-year period of mandatory supervised release. The court also asked defendant, "Is your plea of guilty today voluntary? Is this of your own free will?" Defendant responded, "Yes, it is."

¶ 9      The plea agreement provided defendant would be sentenced to an extended term of 9 years' imprisonment, with credit for 399 days previously served in custody, and a 2-year term of mandatory supervised release. Defendant also agreed to pay a Violent Crime Victims Assistance Act fee and the deoxyribonucleic acid (DNA) analysis fee, if applicable, and he had a credit of $1995 for time spent in custody. At the hearing, counsel informed the court defendant had already submitted his DNA to the Illinois State Police.

¶ 10      After the trial court heard the terms of the plea agreement, the following colloquy occurred:

> "THE COURT: All right. Mr. Glover, you heard what the lawyers have said. Is that the agreement that you have?
>
> MR. GLOVER: Yes, it is, [Y]our Honor.
>
> THE COURT: Has anybody promised you anything else?
>
> MR. GLOVER: No, [Y]our Honor.
>
> THE COURT: Has anyone forced you or threatened you?
>
> MR. GLOVER: No, [Y]our Honor."

The court then asked for the factual basis for the plea, which we summarize briefly. In November 2012, police were summoned to a reported domestic violence incident. Defendant was reportedly on a roof, confronting his girlfriend through a window. When officers arrived, defendant was back on the ground. Although police ordered him to stay put, defendant left the scene in a Cadillac. He later hit a fire hydrant before leaving the vehicle and hiding in a nearby apartment. Later, the police identified the Cadillac as stolen the day before in Charleston, Illinois, defendant's admitted location before coming to Champaign. After

hearing the factual basis, the court accepted defendant's plea of guilty to count IX and dismissed the remaining charges. The court did not address fines or fees at the hearing.

¶ 11 The written sentencing order imposed (1) a Violent Crime Victims Assistance Act fee (with no amount specified) and (2) a DNA analysis fee if not previously paid. The order also included the following language: "The Defendant shall pay all fines, fees[,] and costs as authorized by statute." The certified fines and fees sheet indicates the circuit clerk assessed, in part, the following: (1) $50 "court finance fee," (2) $40 "State's attorney," (3) $2 "State's attorney au[tomation]," (4) $10 "arrestee's medical," (5) $10 "probation oper[ations] ass[istance]," (6) $250 "state offender DN[A]," (7) $10 "tr[affic]/cr[iminal] sur[charge]," (8) $100 "violent crime vict[ims assistance]," (9) $10 "St[ate] Police services," (10) $10 "St[ate] Police operatio[ns]," and (11) $10 "clerk op & admin f[ee]."

¶ 12                                   B. Motion To Withdraw Guilty Plea

¶ 13 On January 17, 2014, defendant filed a motion to withdraw his guilty plea, alleging (1) he did not understand the consequences of his plea due to being under the influence of trazodone, a medication for depression and (2) his plea was involuntary because his Coles County attorney said the assistant State's Attorney would cause him to receive a sentence of 30 years' imprisonment on the Coles County charges if he did not plead guilty in Champaign County case No. 12-CF-1913.

¶ 14 In March 2014, the trial court denied defendant's motion to withdraw his guilty plea. Defendant appealed, and this court docketed the case as No. 4-14-0203. In August 2014, this court summarily remanded the cause for strict compliance with Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013). *People v. Glover*, No. 4-14-0203 (Aug. 18, 2014) (summary order). That same month, counsel for defendant filed an amended Rule 604(d) certificate. Following a September 2014 hearing, the court again denied defendant's motion to withdraw his guilty plea. Defendant again appealed, and this court docketed the case as No. 4-14-0816. In June 2016, this court again remanded for strict compliance with Rule 604(d). *People v. Glover*, No. 4-14-0816 (June 3, 2016) (summary order).

¶ 15 On remand, newly appointed counsel for defendant filed a new motion to withdraw his guilty plea. The motion, in pertinent part, alleged (1) defendant's plea was not knowingly, intelligently, and voluntarily entered into because, at the time of the plea (a) he was under the influence of trazodone and did not understand what was said to him by his lawyer or the judge and (b) he misunderstood the law and facts applicable to his case and believed he could be convicted of both counts of home invasion and faced 60 years' imprisonment, and (2) defendant's prior counsel, Lenik, rendered ineffective assistance by erroneously advising him he could be convicted of both home-invasion counts, despite the one-act, one-crime rule. The motion further alleged Lenik erroneously advised defendant he could not be convicted of (1) home invasion at all, because he had an interest in possessing the residence, or (2) stalking, because the victim contacted him.

¶ 16 In August 2016, the trial court held a hearing on defendant's motion to withdraw his guilty plea. Defendant testified that, in November 2012, the State charged him with multiple counts, including two counts of home invasion and several stalking counts. In December 2013, defendant pleaded guilty to possession of a stolen vehicle and, shortly thereafter, was transferred to Coles County, where he had several other felony charges pending. Prior to his December 2013 plea, Lenik advised defendant he had the right to go to trial. According to

defendant, Lenik told him he could be convicted of both counts of home invasion if he went to trial and never discussed the one-act, one-crime rule with him.

¶ 17    When asked what Lenik told him would happen if he did not take the nine-year plea agreement in this case, defendant stated, "If I didn't take it, we go to trial and I would most likely lose on the—on the home invasion charges and that they would give me 60 years, 30, something about an enhancement and that would get me 60 years." According to defendant, the assistant State's Attorney in Coles County told him he would get 30 years' imprisonment on those charges if he did not plead guilty in this case. Defendant further testified that counsel advised him he was facing 60 years' imprisonment for just the Champaign County case because "[t]hey said the charge would be enhanced." When asked why the charge was enhanced, defendant stated, "I think because he said my background."

¶ 18    Lenik testified she had practiced law for 39 years and represented thousands of clients charged with felonies. According to Lenik, she spoke with defendant approximately 20 times prior to the guilty plea. Lenik did not recall defendant having any apparent difficulty understanding anything she said. Lenik unsuccessfully tried to negotiate a "global resolution," where one sentence would resolve all the pending charges in both Champaign County and Coles County. According to Lenik, she specifically informed defendant there was no resolution to the Coles County charges at the time of the plea in Champaign County. Lenik told defendant he would be transferred to Coles County to resolve the pending charges with his attorney and the prosecutor there.

¶ 19    When asked if she recalled a conversation with defendant regarding any enhanced sentence he would face because of his prior record, Lenik stated, "I don't recall." Lenik also did not recall discussing the one-act, one-crime rule with defendant. When asked if she advised defendant he faced 60 years' imprisonment if he lost at trial, Lenik testified, "I don't believe we ever had a conversation with 60." Finally, when asked what she advised defendant the sentence might be, Lenik said, "first of all[,] we spent a lot of time talking about trial and our defenses and then we spent time talking about global resolution if we could do it with Coles [County] and he would ask me repeatedly to see if I could get a little bit less and a little bit less and all of that. In terms of specific penalties for specific offenses, I don't remember but it probably was 30."

¶ 20    The trial court denied the motion to withdraw defendant's guilty plea. In so doing, the court rejected defendant's claim that he had a defense to the home-invasion charges because he had an interest in possessing the property. The court further rejected defendant's claim his plea was not knowing and voluntary due to medication, stating, "this [c]ourt is very careful when taking pleas of guilty and if there is any indication, the slightest indication, that a defendant doesn't understand[,] the [c]ourt concludes the hearing without a plea and sets it over to make sure that everyone is on the same page." The court concluded, "I don't believe there is anything in this [m]otion to [w]ithdraw [g]uilty [p]lea that would allow the [c]ourt to grant this motion. I'm going to deny it."

¶ 21    This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant appeals, arguing (1) this court should allow him to withdraw his guilty plea because (a) his erroneous belief that he faced 60 years' imprisonment was objectively reasonable and (b) trial counsel erroneously advised him that he faced 60 years'

imprisonment, thereby rendering ineffective assistance of counsel and precluding a knowing and voluntary plea and (2) the circuit clerk improperly imposed numerous fines. We turn first to defendant's claim regarding the withdrawal of his guilty plea.

¶ 24                               A. Withdrawal of Guilty Plea
¶ 25                                  1. *Standard of Review*
¶ 26       In his opening brief, defendant asserts that we should review for an abuse of discretion the trial court's decision not to allow the withdrawal of his guilty plea. However, in his reply brief, defendant contends (1) the court made no credibility determinations and (2) "[w]here the trial court makes no determination on the merits, the standard of review is *de novo* and the reviewing court will perform the same analysis that a trial judge would perform." In support, defendant cites *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25, 960 N.E.2d 27 (citing *People v. Moore*, 207 Ill. 2d 68, 75, 797 N.E.2d 631, 636 (2003)). *Tolefree* and *Moore* addressed the *de novo* standard of review in the context of a trial court's *dismissal* of ineffective assistance claims without a determination of the merits. Where "a trial court has reached a determination on the merits of a defendant's ineffective assistance of counsel claim, we will reverse only if the trial court's action was manifestly erroneous." *Id.* ¶¶ 25, 29 (finding court's failure to conduct further inquiry into the defendant's posttrial ineffective assistance allegations was harmless error and its ruling was not manifestly erroneous).

¶ 27       Defendant contends the trial court made no credibility determinations and, therefore, no determination on the merits. We disagree. Although the court did not explicitly lay out its credibility determinations, it does not follow the court made no determination of the merits of defendant's allegations. Defendant had newly appointed counsel for the hearing on the motion to withdraw his guilty plea. Newly appointed counsel raised claims regarding (1) defendant's erroneous belief that he faced 60 years' imprisonment and (2) plea counsel's ineffective assistance for erroneously advising him he faced 60 years' imprisonment. The court held an evidentiary hearing, during which defendant and plea counsel both testified. The court then denied the motion to withdraw the plea. Although the court did not make a specific finding that it found plea counsel's testimony credible and defendant's testimony incredible, the court necessarily made credibility determinations in denying the motion to withdraw on the merits.

¶ 28       The trial court, by virtue of its ability to observe the conduct and demeanor of the witnesses, is in the best position to make credibility determinations. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 19, 998 N.E.2d 175. "A trial court's credibility determinations are entitled to great deference, and they will rarely be disturbed on appeal." *People v. Clark*, 2014 IL App (1st) 130222, ¶ 26, 12 N.E.3d 708. Absent manifest error, we defer to the court's credibility determinations. *People v. Jacobazzi*, 398 Ill. App. 3d 890, 912, 966 N.E.2d 1, 18-19 (2009).

¶ 29       We conclude that the trial court reached the merits of defendant's motion to withdraw his guilty plea and determined the credibility of the witnesses in so doing. When a trial court reaches the merits of a motion to withdraw a guilty plea, the decision to grant or deny that motion "rests in the sound discretion of the circuit court and, as such, is reviewed for an abuse of discretion." *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439.

¶ 30                                    2. *Misapprehension of the Law*

¶ 31        There is no absolute right to withdraw a guilty plea; rather, a defendant must show a manifest injustice in his or her circumstances. *Id.* "The decision of the trial court will not be disturbed unless the plea was entered through a misapprehension of the facts or of the law, or if there is doubt as to the guilt of the accused and justice would be better served by conducting a trial." *People v. Delvillar*, 235 Ill. 2d 507, 520, 922 N.E.2d 330, 338 (2009). The defendant must show a misapprehension of the law or facts. *Id.* "[T]he failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea." *Id.* Instead, we focus on whether the plea was affirmatively shown to be voluntarily and intelligently made. *Id.*

¶ 32        Defendant contends his plea should be withdrawn because it was entered on the misapprehension of law that he faced as much as 60 years' imprisonment on counts I and II. According to defendant, objective proof shows his misapprehension was reasonably justified because (1) the trial court, at the January 2013 hearing on waiver of counsel, incorrectly stated any sentences on the two charges would run consecutively and (2) the trial counsel incorrectly advised him he faced 60 years' imprisonment on the two charges, either because the sentences would be consecutive or because defendant was extended-term eligible.

¶ 33        The State contends that the trial court found plea counsel's testimony at the hearing on the motion to withdraw defendant's guilty plea credible. The State also contends the court informed defendant on at least two occasions that counts I and II carried possible sentences of 30 years' imprisonment. Defendant notes in his reply brief that one of these instances was during the waiver-of-counsel hearing, when the court told defendant any sentences on counts I and II were mandatorily consecutive to each other, which would carry an aggregate maximum sentence of 60 years. The State does not address the court's improper admonishment at the waiver-of-counsel hearing. We first turn to the court's erroneous admonishment at the waiver-of-counsel hearing.

¶ 34        As an initial matter, we note the trial court did inaccurately admonish defendant as to the possible maximum sentence on counts I and II. Both counts were predicated on the same act of entry into a home. The only difference between the two counts was that count I charged defendant with injuring Stephenson and count II charged defendant with injuring Martin. The supreme court has held that "a single entry will support only a single conviction" of home invasion even if the defendant inflicted injury on two people in a dwelling. *People v. Cole*, 172 Ill. 2d 85, 102, 665 N.E.2d 1275, 1283 (1996). Therefore, defendant could not have been convicted of, and sentenced consecutively on, both counts of home invasion. Defendant contends this erroneous admonishment is objective evidence that his misapprehension of the law was reasonably justified. The problem with defendant's argument is that it does not address the fact that defendant did not plead guilty to home invasion. He pleaded guilty to unlawful possession of a stolen vehicle—a charge completely unrelated to the home invasion charges *and* a charge he was properly admonished on at the guilty plea hearing.

¶ 35        It has long been established that, with respect to voluntariness, "the pertinent knowledge to be provided by the court prior to accepting a guilty plea includes only the direct consequences of the defendant's plea." *Delvillar*, 235 Ill. 2d at 520, 922 N.E.2d at 338. Here, defendant pleaded guilty to unlawful possession of a stolen vehicle and the trial court properly admonished him as to the consequences of his plea. Defendant does not suggest any error in the admonishment on the charge of unlawful possession of a stolen vehicle at the

guilty plea hearing. As such, we are unconvinced by defendant's claim that his misapprehension of the law as to charges he did not plead guilty to—charges which were dismissed—operated to show real justice had been denied. See *People v. Fuller*, 205 Ill. 2d 308, 323, 793 N.E.2d 526, 537 (2002) ("[W]hether reversal is required for an imperfect admonishment depends on whether real justice has been denied or whether the defendant has been prejudiced by the inadequate admonishment.").

¶ 36    The trial court specifically asked defendant (1) if the plea was voluntary and entered of his own free will, (2) whether anybody promised him anything else, and (3) whether anyone forced or threatened him to induce the plea. Defendant expressly stated that the plea was voluntary and he had received no threats or additional promises. Thus, real justice has not been denied. We note, aside from the two counts of home invasion, defendant faced multiple charges with extensive possible penalties that he would be required to serve consecutively to any sentence in Coles County. Also, a sentence of nine years in this case supports the conclusion that defendant suffered no prejudice. Considering what defendant faced, it seems highly unlikely he would have refrained from entering a plea even if he knew he could only be convicted on one count of home invasion. Defendant's alleged misapprehension about the possible maximum sentence for two dismissed charges does not render defendant's plea to unlawful possession of a stolen vehicle invalid.

¶ 37    Defendant also contends that his misapprehension of the law was reasonably justified based on plea counsel's erroneous advice. However, the trial court rejected defendant's self-serving testimony on this point at the hearing on his motion to withdraw his guilty plea. Although the court did not make explicit findings as to credibility, it clearly rejected defendant's version of events and credited plea counsel's account of events. Defendant suggests plea counsel's testimony was mere speculation and, therefore, insufficient to rebut defendant's testimony that counsel told him he faced 60 years' imprisonment. We disagree. Plea counsel testified, "I don't believe we ever had a conversation with 60 [years]." She also stated, "In terms of specific penalties for specific offenses, I don't remember but it probably was 30 [years]." A determination that plea counsel's testimony was credible, particularly given her 39 years of experience as a criminal defense attorney, was not against the manifest weight of the evidence. Accordingly, we conclude the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

¶ 38                                    3. *Ineffective Assistance of Counsel*

¶ 39    One basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice prior to entering the plea. *People v. Manning*, 371 Ill. App. 3d 457, 459, 863 N.E.2d 289, 293 (2007). "A defendant may enter a guilty plea because of some erroneous advice by counsel, but that fact alone does not destroy the voluntary nature of the plea; it must be shown that defendant was denied the effective assistance of counsel under the *Strickland* test." *People v. Cunningham*, 286 Ill. App. 3d 346, 349-50, 676 N.E.2d 998, 1001 (1997). To prevail, the defendant must show (1) deficient performance (*i.e.*, counsel's representation fell below an objective standard of reasonableness) and (2) prejudice (*i.e.*, but for counsel's unprofessional errors, the result of the proceeding would have been different). *People v. Crenshaw*, 2012 IL App (4th) 110202, ¶ 13, 974 N.E.2d 1002 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). "In order to satisfy the 'prejudice' requirement in a plea proceeding, the defendant must show that there is a reasonable

probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *People v. Pugh*, 157 Ill. 2d 1, 15, 623 N.E.2d 255, 261 (1993).

¶ 40    Defendant contends there is a reasonable probability that, but for counsel's allegedly erroneous advice that he faced an enhanced sentence of 60 years' imprisonment on the home-invasion charges, he would have rejected the guilty plea and insisted on going to trial. Defendant also argues the fact that he could be convicted on only one of the home-invasion charges is "nothing if not a claim of actual innocence and an articulation of a plausible defense." We disagree.

¶ 41    If we ignore one of the Class X home-invasion charges, defendant was still facing one Class X felony home-invasion charge, a Class 4 felony criminal-damage-to-property charge, three Class 4 felony stalking charges, a Class 3 aggravated-stalking charge, a Class 4 felony aggravated-fleeing charge, a Class 2 felony unlawful-possession-of-a-stolen-vehicle charge, and two Class A misdemeanor charges for battery. Defendant's contention that he would not have been convicted of one of the home-invasion charges hardly shows a "reasonable probability" that he would not have pleaded guilty had he known the Class X charges carried a sentence of "only" 30 years' imprisonment. The fact that defendant would likely have successfully "defended" one of the home-invasion charges is fundamentally different from a showing of actual innocence or a plausible defense to the remaining *10* felony and misdemeanor charges he faced. Defendant has not shown actual innocence or a plausible defense to the remaining charges, and nothing in the record indicates a *reasonable* probability that defendant would not have pleaded guilty but for counsel's allegedly erroneous advice.

¶ 42    In his petition for rehearing, defendant contends this court, in the foregoing discussion, "treated the fact that [defendant] may not have been better off going to trial as conclusive of the prejudice analysis." In support, defendant cites the recent United States Supreme Court decision in *Lee*, 582 U.S. ___, 137 S. Ct. 1958.

¶ 43    In *Lee*, the defendant, who was not a United States citizen, feared a conviction on one count of possession of ecstasy with intent to distribute might affect his status as a lawful permanent resident. *Id.* at ___, 137 S. Ct. at 1962. His attorney incorrectly assured him the government would not deport him if he pleaded guilty to the charge. *Id.* at ___, 137 S. Ct. at 1962. Based on this assurance, the defendant accepted a guilty plea and was sentenced to a term of imprisonment. *Id.* at ___, 137 S. Ct. at 1963. The defendant later learned he had pleaded guilty to an " 'aggravated felony' " and was subject to mandatory deportation after serving his sentence. *Id.* Upon making this discovery, the defendant filed a motion to vacate his conviction and sentence, arguing he received ineffective assistance of counsel. *Id.* at ___, 137 S. Ct. at 1963.

¶ 44    At the hearing on the motion, both the defendant and his counsel testified deportation was the determinative issue in deciding to accept the guilty plea. *Id.* The testimony established that the defendant asked his attorney multiple times about the effect a guilty plea would have on his immigration status, and the attorney repeatedly reassured him there was nothing to worry about. *Id.* at ___, 137 S. Ct. at 1963. Counsel advised the defendant not to go to trial because his defense to the charge was weak. *Id.* at ___, 137 S. Ct. at 1963. The trial court denied the defendant's motion, concluding he could not show prejudice because he would likely have been convicted had he gone to trial and would have received a longer prison

sentence and subsequent deportation. *Id.* at ___, 137 S. Ct. at 1964. The Sixth Circuit Court of Appeals affirmed, concluding the defendant had no defense to the charge and " 'stood to gain nothing from going to trial but more prison time.' " *Id.* at ___, 137 S. Ct. at 1964 (quoting *Lee v. United States*, 825 F.3d 311, 313 (6th Cir. 2016)).

¶ 45    The Supreme Court addressed the question of whether the defendant could show his attorney's erroneous advice prejudiced him. *Id.* at ___, 137 S. Ct. at 1964. The Court noted, "When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Id.* at ___, 137 S. Ct. at 1965. Rather, "the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Id.* at ___, 137 S. Ct. at 1965 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). That is, when counsel's errors affected a defendant's understanding of the consequences of pleading guilty, prejudice may be shown by "an adequate showing that the defendant, properly advised, would have opted to go to trial." *Id.* at ___, 137 S. Ct. at 1965.

¶ 46    The Supreme Court rejected adopting "a *per se* rule that a defendant with no viable defense cannot show prejudice from the denial of his right to trial." *Id.* at ___, 137 S. Ct. at 1966. The Court noted such a categorical rule was at odds with an inquiry that requires an individual examination of the totality of the evidence. *Id.* at ___, 137 S. Ct. at 1966. Such a rule also overlooks that the inquiry focuses on a defendant's decision making, which may involve concerns other than the likelihood of success at trial. *Id.* at ___, 137 S. Ct. at 1966. The Court went on to write the following:

> "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. [Citation.] Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.

> But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.] When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years. Here [the defendant] alleges that avoiding deportation was *the* determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (Emphasis in original.) *Id.* at ___, 137 S. Ct. at 1966-67.

The Court cautioned *post hoc* assertions by a defendant about how he would have pleaded but for his counsel's deficient performance should not be the only basis for withdrawing a

plea. *Id.* at \_\_\_, 137 S. Ct. at 1967. "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at \_\_\_, 137 S. Ct. at 1967.

¶ 47    The Supreme Court determined the defendant made an adequate showing that, had he known his guilty plea would result in mandatory deportation, he would have gone to trial. The record showed the defendant repeatedly asked counsel about the effect his plea would have on his immigration status, and the defendant and counsel both testified at the evidentiary hearing that he would have gone to trial if he had known the deportation consequences of his plea. *Id.* at \_\_\_, 137 S. Ct. at 1967-68. Finally, the Court disagreed that it would be irrational for the defendant to reject the plea offer in favor of trial, even though going to trial would result in a longer sentence and inevitable deportation. The Court reasoned as follows:

> "But for his attorney's incompetence, [the defendant] would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the 'determinative issue' for an individual in plea discussions, as it was for [the defendant]; if that individual had strong connections to this country and no other, as did [the defendant]; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that 'almost' could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time." (Emphases in original.) *Id.* at \_\_\_, 137 S. Ct. at 1968-69.

The Court acknowledged not everyone in the defendant's position would reject the plea, but it would not be irrational to do so. *Id.* at \_\_\_, 137 S. Ct. at 1969.

¶ 48    In his petition for rehearing, defendant contends this court concluded he was not prejudiced by his counsel's erroneous advice that he faced 60 years' imprisonment because he would not have been better off going to trial. Defendant further asserts that this court, by focusing on the numerous other charges defendant faced, improperly treated defendant's chances of success at trial as conclusive of the prejudice analysis.

¶ 49    This court's reasoning in determining whether defendant had shown prejudice was not premised on hypothesizing that defendant would likely be unsuccessful at trial. Even if defendant had been properly advised as to the maximum sentence he faced, we concluded there was no *reasonable* probability that defendant would not have pleaded guilty. This is so because defendant faced 10 other felony and misdemeanor charges, with the Class X charges carrying a possible sentence of "only" 30 years' imprisonment. A showing of actual innocence or a plausible defense to these remaining charges could shed light on defendant's mindset and decision making—making it more plausible that he would not have pleaded guilty. The potential likelihood of conviction following trial was irrelevant to our reasoning.

¶ 50    Defendant contends, "[h]ere, as in *Lee*, the consequences of taking a chance at trial were markedly harsher than pleading. Indeed, [defendant] accepted a 9-year term of imprisonment based on the erroneous belief that he faced a markedly harsher term of 60 years in prison if he took a chance at trial." Defendant misreads the Supreme Court's decision in *Lee*. The Court reasoned "the consequences of taking a chance at trial were *not* markedly harsher than pleading." (Emphasis added.) *Id.* at \_\_\_, 137 S. Ct. at 1969. For the defendant in *Lee*, the added risk of holding on to a small chance of avoiding deportation was an additional year or two of prison time if he was convicted after a trial. *Id.* at \_\_\_, 137 S. Ct. at 1969. That additional risk was small enough to show that it would not have been irrational to reject the

plea offer, had he been properly advised of the consequences of his plea. As the Court noted, "[t]he decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Id.* at ___, 137 S. Ct. at 1966. By way of illustration, the Court posited, "a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years." *Id.* at ___, 137 S. Ct. at 1966-67.

¶ 51    If defendant had been erroneously advised he faced a sentence of 60 years' imprisonment when he actually faced a sentence of 10 years, his argument that he would not have accepted a guilty plea of 9 years would be more persuasive. Here, the potential sentence defendant actually faced was 30 years, rather than 60 years. Although shorter than defendant was advised, a possible 30-year sentence is still significantly longer than the guilty plea offer of 9 years, which does not support a reasonable probability that defendant would not have pleaded guilty. Defendant points to no contemporaneous evidence he reasonably would have risked facing a 30-year sentence at trial rather than accepting the 9-year guilty plea. Absent a realistic defense or some evidence showing a very small risk in choosing to go to trial instead of entering a plea, we conclude defendant has not made "an adequate showing that [he], properly advised, would have opted to go to trial." *Id.* at ___, 137 S. Ct. at 1965. Accordingly, we decline to "upset [his] plea solely because of *post hoc* assertions from [this] defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at ___, 137 S. Ct. at 1967.

¶ 52    Finally, defendant contends counsel's advice induced him to plead guilty because she erroneously informed defendant he faced a sentence double what he actually faced. As discussed above, the trial court's determination as to plea counsel's credibility was not against the manifest weight of the evidence, and her testimony showed she did not erroneously advise defendant that he faced an enhanced 60-year sentence. Accordingly, we conclude defendant failed to show deficient performance and the court did not abuse its discretion in denying his motion to withdraw his guilty plea based on ineffective assistance of counsel.

¶ 53                                B. Fines and Fees

¶ 54    Defendant contends the following are fines improperly assessed by the circuit clerk and should be vacated: (1) a $2 State's Attorney automation fee; (2) a $250 DNA analysis fee; (3) a $50 "court finance fee"; (4) a $10 "Arrestee's Medical" fee; (5) a $10 traffic criminal surcharge fee; (6) a $10 "St[ate] Police Operatio[ns]" fee; (7) a $10 "Probation Oper[ations] Ass[istance]" fee; (8) a $30 assessment that included a $10 "State's Attorney" fine, a $10 "St[ate] Police Services" fine, and a $10 "Clerk Op & Admin F[ee]"; and (9) a $100 Violent Crime Victims Assistance Act fine. The State concedes all of these assessments are fines improperly assessed by the circuit clerk except for the $2 State's Attorney automation fee. The State further concedes that all the fees that are actually fines should be vacated and the proper recourse for the State is to seek a writ of *mandamus*. We accept the State's concession and vacate the above assessments (with the exception of the $2 State's Attorney automation fee, which we address below) improperly assessed by the circuit clerk.

¶ 55    The State contends the $2 State's Attorney automation fee is, indeed, a fee and, thus, it was properly assessed by the circuit clerk. The State relies on this court's decision in *People v. Warren*, 2016 IL App (4th) 120721-B, ¶¶ 113-16, 55 N.E.3d 117. Defendant asks this

court to reconsider our holding in *Warren* in light of the First District Appellate Court's decision in *People v. Camacho*, 2016 IL App (1st) 140604, ¶ 56, 64 N.E.3d 647. The *Camacho* court held the State's Attorney automation fee was not a "fee" because it did "not compensate the [S]tate for the costs associated in prosecuting a particular defendant." *Id.* We note other First District decisions have expressly disagreed with *Camacho* and, instead, followed this court's decision in *Warren*. See, *e.g.*, *People v. Murphy*, 2017 IL App (1st) 142092, ¶¶ 19-21, 77 N.E.3d 96 ("[W]e agree with the analysis in *Warren* and the numerous cases cited above that when a charge does not include a punitive aspect, it is a fee, not a fine."). We decline defendant's invitation to reconsider our holding in *Warren* and, thus, we conclude the $2 State's Attorney automation assessment was a fee properly assessed by the circuit clerk. Thus, we do not vacate the $2 State's Attorney automation fee. See *People v. Daily*, 2016 IL App (4th) 150588, ¶ 31, 74 N.E.3d 15.

¶ 56                                    III. CONCLUSION

¶ 57        For the reasons stated, we vacate the fines improperly imposed by the circuit clerk. We otherwise affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2016).

¶ 58        Affirmed in part and vacated in part.