2025 IL App (4th) 240782

NO. 4-24-0782

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DERRICK G. EDMONDSON, | ) | No. 22CF756 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Doherty and Grischow concurred in the judgment and opinion.

**OPINION**

¶ 1        In June 2023, defendant, Derrick G. Edmondson, pleaded guilty to aggravated

battery (720 ILCS 5/12-3.05(a)(4) (West 2022)). In exchange for his guilty plea, the State agreed

to dismiss several other charges and to cap its sentencing recommendation at eight years in

prison. In August 2023, the trial court sentenced defendant to four years in prison.

¶ 2        Later in August 2023, defendant filed a motion to withdraw his guilty plea,

arguing that his plea was not knowing and voluntary because the trial court and his attorney

erroneously informed him that he was eligible for probation. The court denied defendant's

motion, finding that, although the court had erred in its admonition to defendant, he had not been

prejudiced.

¶ 3        Defendant appeals, arguing that (1) the trial court erred by denying his motion to

withdraw his guilty plea because it erroneously informed him that he was eligible for a sentence of probation and (2) his attorney provided ineffective assistance by incorrectly advising him that he was eligible for a sentence of probation.

¶ 4 Because we agree that defendant's guilty plea counsel provided ineffective assistance, we reverse the trial court's denial of defendant's motion to withdraw his guilty plea and remand for further proceedings as directed in this opinion.

¶ 5                                I. BACKGROUND

¶ 6                               A. The Charges

¶ 7 In July 2022, the State charged defendant with (1) aggravated domestic battery, a Class 2 felony (*id.* § 12-3.3(a), (b)), (2) aggravated battery, a Class 3 felony (*id.* § 12-3.05(d)(1), (h)), and (3) domestic battery with a prior domestic battery conviction, a Class 4 felony (*id.* § 12-3.2(a)(2), (b)). The charges alleged that on July 29, 2022, defendant (1) intentionally strangled his 17-year-old son, Derrick Edmondson III, and (2) punched his 63-year-old father in the face. The charges alleged that defendant had been convicted twice before of domestic battery.

¶ 8 In August 2022, the State added a fourth charge, which was for aggravated domestic battery, a Class 2 felony (*id.* § 12-3.3(a), (b)), alleging that defendant caused great bodily harm to his father by punching him in the face, causing a nasal fracture. The State then dismissed the Class 3 felony aggravated battery charge.

¶ 9                          B. The Guilty Plea Hearing

¶ 10 In June 2023, the trial court conducted a hearing at which the parties announced they had reached an agreement for defendant to plead guilty to a newly filed count—namely, aggravated battery, a Class 2 felony (*id.* § 12-3.05(a)(4), (h)). In this new count, the State alleged defendant had struck his father, who was at least 60 years old, causing a nasal fracture. The

parties agreed that based on defendant's criminal record, (1) he was extended-term eligible and (2) any prison sentence would be required to be served at 85% (see 730 ILCS 5/3-6-3(a)(2)(ii) (West 2022)). In exchange for defendant's guilty plea, the State agreed to dismiss all of the other charges against defendant and cap its sentencing recommendation at eight years in prison.

¶ 11　　　　　At the guilty plea hearing, the trial court asked defendant if he understood the charges against him, and defendant replied, "Yes." The court explained that the charge was a Class 2 felony, punishable by a "term of probation of up to 48 months with 180 days jail. *** It could also be punishable by a sentence in the Department of Corrections." The court further explained that (1) defendant was extended-term eligible and (2) any prison sentence imposed would be for a minimum of three years, to be served at 85%. When the court asked defendant if he understood the plea agreement and the potential sentences he faced, he replied, "Yes." The State then provided a factual basis for defendant's guilty plea, which the court accepted.

¶ 12　　　　　　　　　　　C. The Sentencing Hearing

¶ 13　　　　　In August 2023, the trial court conducted defendant's sentencing hearing. At the beginning of the hearing, the court noted that defendant had pleaded guilty to a Class 2 felony and was extended-term eligible, probation eligible, and subject to a sentencing range of 3 to 14 years in prison. The court stated that it had received a presentence investigation report (PSI) and asked the parties if they had any corrections. Defense counsel volunteered a few corrections to the PSI but did not object to its being considered by the court. The PSI contained information regarding defendant's criminal history, mental health, and military service.

¶ 14　　　　　Defendant's criminal history included (1) a 2008 conviction in Georgia for driving under the influence of alcohol, (2) a 2014 conviction in New York for "crim obstruction breathing," (3) a 2014 conviction in New York for criminal contempt, (4) a 2015 conviction in

Indiana for domestic battery, and (5) a 2016 conviction in Illinois for aggravated domestic battery (strangulation).

¶ 15 Regarding his military service, defendant had enlisted in the army and served four tours of duty in active combat in Iraq and Afghanistan. In 2013, he received an "other than honorable discharge" from the army.

¶ 16 According to "probation case notes," defendant was discharged "from the United States Army due his diagnosis of post-traumatic stress disorder [(PTSD)]." However, "[d]uring a domestic violence evaluation, [defendant] reported he was discharged from the Army 'in relation to a bar fight he got into in which he struck a man with a beer mug.' "

¶ 17 Defendant's father read his victim impact statement and recounted how defendant had attacked him without provocation and also strangled his grandson. He addressed defendant as follows:

> "[Defendant,] what you have done to me is unforgiveable, and every night, I see you punching me and stomping me in my head and my chest and kicking my body.
>
> I ended up with a broken nose, a bruise on my chest the shape of your shoe, and bruised rib, two black eyes, a concussion, and two torn eye muscles which I'm having surgically repaired in October, and various other injuries. You even changed the way I walk, the way you kicked and stomped me.
>
> * * *
>
> *** Your [*modus operandi*] is to beat women and to terrorize children. Now, you graduated to beating and stomping senior citizens in the ground.
>
> I implore the Court that you get the maximum sentence allowable on your

- 4 -

plea agreement."

¶ 18        In mitigation, defendant presented a collection of letters and documents on his behalf. The letters were from friends and family, including his son, who described defendant as a family man and provider who made mistakes. The letter from his son states that he was "writing this letter to prove my dad's innocence[;] my grandfather provoked my father to lash out the way he did[,] knowing my dad was in the middle of an episode."

¶ 19        Defendant, who was 39 years old at the time of the sentencing hearing, testified that the altercation between him and his son occurred because his son was stealing to support his drug habit. Defendant's father showed up at some point, and defendant "exited [his] home after a brick was thrown through [his] bedroom window." He then argued with his father, who shoved him, and he "just reacted" to that provocation. Defendant also discussed his struggles with post-traumatic stress disorder (PTSD) after serving four combat tours.

¶ 20        The State asked for a sentence of eight years in prison, and the defense argued for probation. Defense counsel stressed that defendant had demonstrated over the years that he was "somebody who wants to get well" and that the PSI showed defendant would comply with a probation sentence.

¶ 21        Defendant made a statement in allocution, apologizing to his father and noting his belief that his actions toward his son "save[d] him" because his son had subsequently entered the military.

¶ 22        Following the parties' arguments and defendant's statement in allocution, the trial court stated that it had "considered the factual basis, the [PSI], the history, character and attitude of the defendant, the evidence and the arguments, the exhibits presented today, the victim's statement, testimony today, and the statement in allocution." The court also stated that it had

considered the relevant statutory factors in aggravation and mitigation.

¶ 23　　　　　Ultimately, the trial court sentenced defendant to four years in prison. The court explained its reasoning as follows:

> "I also think this is a circumstance where, if not for the evidence of your prior service and existing, which I believe you have, and evidence of prior service and PTSD, this is a circumstance where, based on your criminal history, I might be in a hypothetical situation where I was thinking that the eight years was too low.
>
> * * *
>
> I'm looking at your prior record, and it's not a matter of just counting priors and saying, 'all right, this person has a certain number of felonies or this person has a certain number of misdemeanors or a combination of them'. I mean I look at it from the context of a history of prior criminal activity, but I'm also factoring in what is the current case. That's concerning to me, because some of the notable things in your prior criminal history are in relation to violence.
>
> * * *
>
> Based on the total circumstances here, *** causing great bodily harm to a person age sixty years of age or older, a community-based sentence would deprecate the seriousness of the offense and a sentence to the Department of Corrections is necessary to deter others and protect the community."

¶ 24　　　　　　　　　　D. New Counsel Appointed for Defendant

¶ 25　　　　　Later in August 2023, defendant *pro se* filed a motion to reconsider his sentence in which he asserted claims of ineffective assistance of counsel.

¶ 26       In October 2023, the trial court conducted a hearing on that motion. At the beginning of the hearing, the court noted that (1) defendant was present with counsel and (2) defendant had raised a *Krankel* issue (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) in his *pro se* filing.

¶ 27       Defendant's counsel asked to be allowed to withdraw and stated that he could not adopt defendant's *pro se* motion because it misstated the law and facts. However, counsel also informed the trial court that lengthy plea negotiations with the State involved the State's agreement to dismiss the nonprobationable charges so that defendant could plead guilty to a probationable offense, "thus giving us a shot at sentencing on [*sic*] probation." The court asked if defendant was fine with counsel's withdrawal, and defendant answered, "Yes." The court granted counsel's oral motion to withdraw and, at defendant's request, appointed the McLean County public defender to represent defendant in postplea proceedings.

¶ 28              E. The Hearing on the Motion To Withdraw Guilty Plea

¶ 29       In March 2024, defendant, through his new counsel, filed a motion to withdraw his guilty plea. The motion asserted that defendant's plea was not knowing and voluntary because he pleaded guilty believing he was eligible for probation but later discovered that he was not. Despite defendant's not being eligible for probation for his conviction of aggravated battery of a senior citizen (see 730 ILCS 5/5-5-3(c)(2)(I) (West 2022)), "[t]he parties erroneously agreed, and the court erroneously admonished, that Defendant was eligible for probation."

¶ 30       Attached to the motion was an affidavit in which defendant averred, "If I had known I was not eligible for Probation, I would not have plead [*sic*] guilty and I would have gone to a jury trial." Defendant alleged that this error constituted (1) ineffective assistance of counsel and (2) a failure of the trial court to comply with Illinois Supreme Court Rule 402(a)(2)

(eff. July 1, 2012).

¶ 31    When the public defender filed the motion to withdraw defendant's guilty plea, the public defender asserted in that motion that "[p]robation eligibility was the key benefit of Defendant's bargain." During argument on that motion, the public defender argued the following: "Probation eligibility was the benefit of Defendant's bargain. He believed he was probation eligible. He would not have pled guilty or waived his right to a jury trial if he knew he was not probationable."

¶ 32    In May 2024, the trial court conducted a hearing on defendant's motion to withdraw his guilty plea. The court agreed with defendant that it had erroneously informed him that he was eligible for probation, explaining as follows:

> "I thought it was probationable at the time. I thought it was probationable at the time of the sentencing, and actually I didn't realize it was non-probationable—I mean we certainly [have] all seen it, but in terms of what reminded that it was applicable and non-probationable until—well, it would have been the first date that we were here after you filed your motion and then reading that and getting the transcript and seeing the admonishment I gave."

¶ 33    The trial court noted that it would likely not have given defendant only four years in prison had it known that he was not eligible for probation because the court believed it was "giving something in the mid to higher range by not doing a community-based sentence." Citing *People v. Rhoades*, 289 Ill. App. 3d 292 (1997), *People v. Mendoza*, 342 Ill. App. 3d 195 (2003), and *People v. Young-Bey*, 2013 IL App (1st) 120694-U, the court concluded as follows:

> "So, I am acknowledging my mistake on that admonishment, but [Rule] 402 I think was substantially complied with otherwise and not to the detriment of

the Defendant in this case. There was no denial of real justice, and he was not prejudiced in any way. But, instead, it actually worked to the Defendant's benefit because, as I said, had I known this was a mandatory DOC term instead of probation—had I known it was a mandatory DOC term instead of being probation eligible, I would have undoubtedly considered a longer sentence in this case."

¶ 34    This appeal followed.

¶ 35                    II. ANALYSIS

¶ 36    Defendant appeals, arguing that (1) the trial court erred by denying his motion to withdraw his guilty plea because it erroneously informed him that he was eligible for a sentence of probation and (2) his attorney provided ineffective assistance by incorrectly advising him that he was eligible for a sentence of probation.

¶ 37    Because we agree that defendant's guilty plea counsel provided ineffective assistance, we reverse the trial court's denial of defendant's motion to withdraw his guilty plea and remand for further proceedings as directed in this opinion.

¶ 38            A. Defense Counsel's Error Prejudiced Defendant

¶ 39    Defendant argues that his attorney was ineffective because counsel erroneously advised defendant that he was eligible for probation if he accepted the plea agreement that the State offered. Defendant asserts that, if he had been correctly advised by his attorney that he was not probation eligible, he would not have pleaded guilty. We agree.

¶ 40            1. *The Applicable Law and Standard of Review*

¶ 41    A defendant may be allowed to withdraw his guilty plea if he received ineffective assistance of counsel prior to entering his plea. *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39. To establish a claim of ineffective assistance in the guilty plea context, a defendant must

demonstrate that (1) "his counsel's performance fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *People v. Brown*, 2017 IL 121681, ¶¶ 25-26. In other words, to prove prejudice, a defendant must show that rejecting the plea deal would have been rational, given the circumstances of his case. *Id.* ¶ 48.

¶ 42    The defendant must satisfy both prongs of the ineffective assistance of counsel standard, and his failure to satisfy either prong precludes a finding of ineffectiveness. *People v. Torres*, 2024 IL 129289, ¶ 27.

¶ 43                                2. *This Case*

¶ 44    Here, as the State concedes, no question exists that defendant's guilty plea counsel erred by advising defendant that he would be eligible for probation if he pleaded guilty. Accordingly, the only question we need to decide is whether, under the circumstances of this case, defendant's choice to reject the plea agreement and instead to go to trial would have been a rational decision.

¶ 45    Regarding the potential sentences to which defendant was exposed, the record shows that defendant, without the benefit of the plea agreement, faced a maximum aggregate sentence of 28 years in prison because he (1) had a prior conviction for aggravated domestic battery, (2) was charged with beating two different family members—an elderly man and a teenager, (3) was subject to discretionary consecutive sentencing for the protection of the public (see 730 ILCS 5/5-8-4(c)(1) (West 2022)), and (4) was subject, on each conviction for aggravated domestic battery, to a mandatory prison term of not less than 3 years and not more than 14 years, which was nonprobationable (720 ILCS 5/12-3.3(b) (West 2022)).

¶ 46　　　　However, in exchange for defendant's guilty plea, the State agreed to (1) dismiss all but one charge against him and (2) cap its sentencing recommendation at eight years in prison. Given these choices, did a reasonable probability exist that, but for defendant's guilty plea counsel's error, defendant would have forgone pleading guilty and, instead, insisted on going to trial? See *Brown*, 2017 IL 121681, ¶¶ 25-26.

¶ 47　　　　The State contends that because defendant did not have a realistic defense he would not have rationally elected a jury trial over a guilty plea, risking a possible 28-year prison sentence, when he could agree to plead guilty to only one offense for a maximum of 8 years in prison. However, prejudice in the context of a claim of ineffective assistance of guilty plea counsel involves more than a court's balancing of the strength of the case against a defendant, the possible sentence if he went to trial, and the lesser sentence he would receive pursuant to his negotiated guilty plea.

¶ 48　　　　In *Glover*, 2017 IL App (4th) 160586, ¶ 2, the defendant claimed on appeal that the trial court erred when it denied his motion to withdraw his guilty plea. That motion was based, in part, on the defendant's assertion that his trial counsel erroneously advised him that he faced an enhanced sentence of 60 years in prison. *Id.*

¶ 49　　　　When addressing the defendant's claim on appeal, this court discussed the then-recent opinion of the United States Supreme Court in *Lee v. United States*, 582 U.S. 357 (2017), and wrote the following:

　　　　　　"In *Lee* [*v. United States*, 582 U.S. 357, 137 S. Ct. 1958 (2017)], the defendant, who was not a United States citizen, feared a conviction on one count of possession of ecstasy with intent to distribute might affect his status as a lawful permanent resident. *Id.* at ___, 137 S. Ct. at 1962. His attorney incorrectly assured

him the government would not deport him if he pleaded guilty to the charge. *Id.* at

___, 137 S. Ct. at 1962. Based on this assurance, the defendant accepted a guilty

plea and was sentenced to a term of imprisonment. *Id.* at ___, 137 S. Ct. at 1963.

The defendant later learned he had pleaded guilty to an ' "aggravated felony" '

and was subject to mandatory deportation after serving his sentence. *Id.* Upon

making this discovery, the defendant filed a motion to vacate his conviction and

sentence, arguing he received ineffective assistance of counsel. *Id.* at ___, 137 S.

Ct. at 1963.

> \*\*\*

The Supreme Court addressed the question of whether the defendant could

show his attorney's erroneous advice prejudiced him. *Id.* at ___, 137 S. Ct. at

1964. The Court noted, 'When a defendant alleges his counsel's deficient

performance led him to accept a guilty plea rather than go to trial, we do not ask

whether, had he gone to trial, the result of that trial "would have been different"

than the result of the plea bargain.' *Id.* at ___, 137 S. Ct. at 1965. Rather, 'the

defendant can show prejudice by demonstrating a "reasonable probability that, but

for counsel's errors, he would not have pleaded guilty and would have insisted on

going to trial." ' *Id.* at ___, 137 S. Ct. at 1965 (quoting *Hill v. Lockhart*, 474 U.S.

52, 59 (1985)). That is, when counsel's errors affected a defendant's

understanding of the consequences of pleading guilty, prejudice may be shown by

'an adequate showing that the defendant, properly advised, would have opted to

go to trial.' *Id.* at ___, 137 S. Ct. at 1965.

The Supreme Court rejected adopting 'a *per se* rule that a defendant with

no viable defense cannot show prejudice from the denial of his right to trial.' *Id.* at ___, 137 S. Ct. at 1966. The Court noted such a categorical rule was at odds with an inquiry that requires an individual examination of the totality of the evidence. *Id.* at ___, 137 S. Ct. at 1966. Such a rule also overlooks that the inquiry focuses on a defendant's decision making, which may involve concerns other than the likelihood of success at trial. *Id.* at ___, 137 S. Ct. at 1966. The Court went on to write the following:

'A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendants obviously weigh their prospects at trial in deciding whether to accept a plea. [Citation.] Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.

But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.] When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. *** Here [the defendant] alleges that avoiding deportation was *the* determinative

- 13 -

factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial.' (Emphasis in original.) *Id.* at ___, 137 S. Ct. at 1966-67." *Glover*, 2017 IL App (4th) 160586, ¶¶ 43-46.

¶ 50 The fact that a defendant may not have a strong defense is merely one fact to consider in determining whether that defendant, properly advised by counsel, would have gone to trial. See *Lee*, 582 U.S. at 366. In making this assessment, we "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369.

¶ 51 In essence, defendant asserts that the possibility of avoiding any prison time was more important to him than the possibility of being convicted on both counts and facing up to 28 years in prison. This assertion is supported by the record. Defendant's statements, as well as those of his guilty plea counsel, show that the *chance* for probation was the primary focus of the plea discussions and negotiations in this case.

¶ 52 We view defendant's thinking in this case as similar to the thinking of the defendant in *Lee*. Just as the Supreme Court concluded that the defendant in *Lee* would have rejected any guilty plea leading to deportation (*id.* at 367-69), we conclude that defendant in this case would have rejected any guilty plea that did not offer at least the *chance* to be sentenced to probation. We also conclude that a reasonable probability exists that, had defendant been properly advised that he was not eligible for probation, he would not have accepted the negotiated guilty plea and, instead, would have chosen to go to trial. Accordingly, we conclude that defendant received ineffective assistance of counsel in connection with his guilty plea, and

we remand this case for further proceedings as directed in this opinion.

¶ 53                    B. Directions for the Trial Court on Remand

¶ 54         We have already held that under the circumstances of this case, defendant received ineffective assistance of counsel in connection with his guilty plea. However, on remand, we direct the trial court to take the following actions before vacating defendant's guilty plea and setting this case for further proceedings: (1) appoint counsel to represent defendant at the remand hearing if defendant has not already hired counsel and (2) admonish defendant as directed herein.

¶ 55         Following the format of Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), the trial court should admonish defendant in open court by addressing him personally and determining that he understands the following:

        (1) the nature of the charge to which he had pleaded guilty;

        (2) the minimum and maximum sentence prescribed by law for a conviction of that charge, including, when applicable, the penalty to which defendant may be subjected because of prior convictions or consecutive sentences; and

        (3) the sentence he is currently serving as a result of that guilty plea.

¶ 56         The trial court must also explain to defendant and determine that he understands that, if he persisted in moving to withdraw his guilty plea and his motion were granted, (1) all charges previously dismissed by the State would be reinstated, (2) the State could proceed to trial on all those charges, and (3) any concessions made by the State as part of the plea agreement would no longer apply, such as the sentencing cap. The court should admonish defendant as to the possible sentencing range for each individual charge, as well as the aggregate sentence he

- 15 -

could face if convicted of all the previously dismissed charges.

¶ 57 The Illinois Department of Corrections website shows that defendant's current projected parole date is February 11, 2027. The trial court should ask the prosecutor and defense counsel if they agree that date is correct. Assuming they agree, the court should then inform defendant of that date so the record is clear that he knows when he is scheduled to be released from prison under the terms of his current guilty plea, which would remain in effect if he were to forgo his motion to withdraw his guilty plea.

¶ 58 After the trial court's admonitions, the court should offer defendant the opportunity to consult with his counsel before the court asks defendant if he wishes to persist in his motion to withdraw his guilty plea.

¶ 59 We direct the trial court on remand to proceed in this fashion out of a concern for simple fairness. We earlier mentioned that defendant, by pleading guilty, (1) received a sentence of 4 years, which was 1 year over the minimum prison sentence for a Class 2 felony, and (2) avoided a possible aggregate 28-year prison sentence if he had instead gone to trial on all the charges against him. The record should be clear defendant understands that (1) if the court grants his motion to withdraw, the State would be able to revive all of the charges it dismissed and (2) defendant would again face a maximum aggregate 28-year prison sentence.

¶ 60 At this point, this record is silent regarding defendant's understanding of the consequences of the trial court's granting his motion to withdraw his guilty plea. That is, for all we know, defendant may believe that, if his motion is granted, he could not be subject to any prison sentence greater than four years, the sentence imposed pursuant to the guilty plea he is now seeking to withdraw. More particularly, this record contains no indication that defendant understands, if his motion is granted, that he faces a possible aggregate sentence of 28 years,

*seven times greater than his current sentence.*

¶ 61 During oral argument in this case, we asked defendant's counsel on appeal if defendant was aware of the risk he was taking by (1) first moving to withdraw his guilty plea and (2) then appealing the trial court's denial of that motion. Counsel responded that he had discussed those points with defendant, and counsel believed defendant understood the risks.

¶ 62 Although we completely accept counsel's representations, given the significance of defendant's decision regarding whether to persist in his motion to withdraw his guilty plea, we conclude that a record of the trial court's admonitions in open court as we have now directed is necessary to protect defendant's interests.

¶ 63 C. Suggestions for Hearings on Motions To Withdraw Guilty Pleas

¶ 64 Experience shows that motions to withdraw guilty pleas are not uncommon, particularly in cases involving serious crimes in which, as a result of plea negotiations, a defendant has received a substantial prison sentence. Typically, as in the present case, the record contains no indication that the defendant understands the possible consequences of the trial court's granting his motion to withdraw guilty plea.

¶ 65 The same concerns that motivated our directions on remand in this case might well apply in any such case. Thus, we suggest that trial courts, when dealing with motions to withdraw guilty pleas, consider using the admonitions we have required on remand in this case at a hearing on such a motion.

¶ 66 III. CONCLUSION

¶ 67 For the reasons stated, we reverse the trial court's judgment and remand for a hearing in which defendant, represented by counsel, is fully admonished on the record regarding the consequences of withdrawing his guilty plea. Defendant must then be given the opportunity

to consult with his counsel before deciding whether to persist in his motion to withdraw his guilty plea.

¶ 68          Reversed and remanded with directions.

*People v. Edmondson*, 2025 IL App (4th) 240782

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 22-CF-756; the Hon. J. Jason Chambers, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Daniel J. O'Brien, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Erika Reynolds, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |