# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2018 IL App (3d) 150679

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BLAIR A. JOHNSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0679 |
| Filed | February 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 13-CF-1075; the Hon. Kevin W. Lyons, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice Carter and Justice Holdridge concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Blair A. Johnson, appeals the trial court's denial of his motion to withdraw his guilty plea following his conviction for home invasion. Specifically, defendant argues that his plea was not knowing, voluntary, and intelligent because plea counsel allegedly failed to advise him that agreeing to a sentencing cap would bar him from appealing his sentence. We affirm.

¶ 2 FACTS

¶ 3 Defendant was charged with home invasion (720 ILCS 5/19-6(a)(3) (West 2012)) in that he knowingly entered the residence of Ronald and Mari Halliday with reason to know that one or more persons were present while armed with a handgun and threatened the imminent use of force upon Ronald. Defendant was also charged with two counts of armed robbery (*id.* § 18-2(a)(2)) (one for each victim), two counts of aggravated unlawful restraint (*id.* § 10-3.1(a)) (one for each victim), and residential burglary (*id.* § 19-3(a)).

¶ 4 Defendant pled guilty to home invasion in exchange for the State's agreement to a sentencing cap of 40 years' imprisonment and the dismissal of the remaining charges. The court stated: "And People are agreeing to a cap of 40. It would normally be 45, is that correct?" The prosecutor replied: "That is correct." The court admonished defendant regarding his rights.

¶ 5 The court asked defendant if he was satisfied with his attorney's representation. Defendant replied, "Not really, but I'll have to deal with it." The court asked defendant what he meant, and defendant said, "I just don't feel like I was represented right." The court took a 20-minute break for defendant to discuss the matter with his attorney. After the recess, plea counsel stated that defendant did not want him to withdraw. Defendant said that was correct. Plea counsel said that defendant was not upset with his representation. Rather, defendant was upset with the State's plea offer and believed plea counsel should have negotiated him a better deal. Plea counsel explained that the State had only offered the 40-year sentencing cap and would not budge. The court asked defendant again if he was satisfied with his attorney's representation, and defendant said yes. Defendant stated he wished to proceed with the partially negotiated plea.

¶ 6 The court read the home invasion charge from the indictment and asked defendant if he understood the charge he was pleading guilty to. Defendant said yes. The following exchange occurred:

> "THE COURT: Now, this is a special Class X felony in that it is a class—we call Class X plus 15. That means the minimum mandatory prison sentence is 21 years. And normally a Class X plus 15 would be 21 to 45 but because of your partially negotiated plea agreement calls for a cap of 40 years in the Department of Corrections, your sentence will be an exact term between 21 and 40 years, and when you are released it will be followed immediately by mandatory supervised release of three years. Do you understand that, sir?
>
> DEFENDANT: Yes."

The court continued admonishing defendant as to the trial rights he was relinquishing by pleading guilty.

¶ 7        The State read the factual basis for the plea. The State stated that Ronald and Mari Halliday told a police officer that they were sleeping in their home on the night of the incident. After 2 a.m., the Hallidays were awoken by two unknown black males wearing ski masks. Both men were armed with handguns and held flashlights. The two men told the Hallidays to roll over or they would be killed. The men tied up Ronald's hands and feet. Approximately one hour later, the men tied up Mari. Ronald and Mari could hear other people downstairs. The incident lasted over two hours. At least one of the men stayed inside the bedroom with the Hallidays the entire time. The men laughed about the Hallidays living in a gated community. They held the barrels of their handguns to the Hallidays' heads. The men told the Hallidays that if they reported the incident to the police, they would come back and kill them. The Hallidays heard at least four other individuals in their home throughout the incident. After the men left, the Hallidays fled to a neighbor's house and called the police. The Hallidays determined that the men had taken several items of property from their residence, including jewelry and televisions.

¶ 8        The State said that Perry Rosetto told the police that he and several other individuals, including defendant, were involved in the Halliday home invasion. Rosetto reported that he and defendant were involved in tying up the Hallidays. The State said that it would call Ahmed Malik as a witness. Malik had purchased items from defendant and Rosetto that the Hallidays later identified as property stolen from their home.

¶ 9        The court found the factual basis sufficient and accepted defendant's guilty plea.

¶ 10        Defendant hired new counsel to represent him during sentencing.

¶ 11        A presentence investigation report (PSI) was prepared. The PSI showed that defendant was 21 years old. Defendant had a prior misdemeanor conviction for theft of motor fuel and two ordinance convictions for fireworks and disorderly conduct. Defendant was previously employed at a bowling alley for approximately four years. After that, he worked as "a maintenance/van driver" at a hotel for approximately one year. Defendant reported abusing marijuana and prescription drugs. Defendant began consuming alcohol when he was 16 years old. The PSI included a victim impact statement from Mari requesting that the court give defendant the maximum sentence. A supplemental PSI contained letters from defendant's friends and family.

¶ 12        A sentencing hearing was held. As evidence in aggravation, the State offered a certified copy of the testimony of Mari and Ronald. The court noted that it had presided over the trial of defendant's codefendant and heard the Hallidays' testimony. The transcript was entered into evidence. The State argued that defendant should be sentenced to the "higher end of 40 years" based on the terror he inflicted on the Hallidays. Defense counsel argued that defendant should receive a minimum sentence in light of his employment history, his lack of a criminal record, his family's support, and his cooperation with law enforcement. Defendant gave a statement in allocution in which he apologized to the Hallidays for the emotional stress he caused them. Defendant said he was grateful that no one was physically hurt during the incident.

¶ 13        The court sentenced defendant to 40 years' imprisonment. The court stated that it had considered the PSI, the arguments of the parties, defendant's statement in allocution, the statutory factors in aggravation and mitigation, and defendant's history and character. The court discussed defendant's employment history. The court stated: "The crime [defendant] committed is not the worst crime in the world, but it's close." The court reasoned:

"[H]ere are the things I find particularly aggravating: You just couldn't stop. At least you stole and ransacked their home and took six televisions, yanked them right off the wall, two laptops, handbags, all handbags, jewelry, watches, rings, heirlooms, two cars, an SUV and a BMW; and apparently these were so upscale and apart from you and your cohorts, that you had to come back in and ask them how to start the car."

The court stated: "The Hallidays were terrorized and you, sir, were the terrorist. They were terrorized with guns to their heads and made them feel as though you would decide if they would live or die."

¶ 14    Defendant filed a motion to reconsider his sentence, arguing that the 40-year sentence was excessive in light of various mitigating factors and the fact that defendant's codefendant received a sentence of only 12 years' imprisonment for "essentially committing the exact same crime."

¶ 15    Five days later, defendant filed a motion to withdraw his guilty plea arguing that plea counsel failed to advise him as to the effect of the sentencing cap on defendant's ability to appeal his sentence. The motion argued:

"That the plea itself had a cap of only five (5) years under the maximum 45 year sentence given the Defendant's circumstances it is almost per se ineffective assistance of counsel in the sense that it was a marginal benefit gained for a significant waiver of his ability to appeal the length of his sentence from the sentencing hearing."

¶ 16    A hearing was held on defendant's motion. The State argued that defendant could not challenge his sentence with a motion to reconsider because defendant's 40-year sentence was within the agreed-upon sentencing cap. The court denied defendant's motion to reconsider his sentence.

¶ 17    The hearing proceeded to defendant's motion to withdraw his guilty plea. Defendant testified on his own behalf. Defendant said that plea counsel never advised him that agreeing to a sentencing cap would affect his ability to appeal his sentence. Defense counsel asked defendant if his plea counsel had discussed his options of pleading guilty or going to trial prior to defendant's guilty plea. Defendant replied: "No. He just said that if I didn't take [the plea] today that we had to go to trial, and that I would receive 90 years or something." On cross-examination, the following exchange occurred between defendant and the prosecutor:

"Q. Okay. So when the Court asked you [at the plea hearing], 'Have [you] discussed this partial plea agreement fully with your attorney ***,' you answered, 'Yes' so that answer was yes?

A. Yeah, just to [plea counsel] telling me that it was the 21 to 40.

Q. Okay. So did you have some misunderstanding of discussing the agreement fully?

A. I didn't know that if I was to go to trial that the most I could receive was 45.

Q. Okay. Now you indicated—well, how do you know that's necessarily true? You were potentially subject to a consecutive sentence on these charges.

A. Because they said that considering I'm only charged with one incident, that it would only be the one incident I could get charged with at the most was 45."

¶ 18    The court denied defendant's motion to withdraw his guilty plea. The court noted that it had read the transcript of defendant's plea proceedings, which had been held in front of another judge. The court remarked that the plea "was as by the book as it could be." The

court reasoned: "And although there may be regrets, I don't see that there's anything that would support the motion for withdrawing the plea."

¶ 19                                              ANALYSIS

¶ 20     Defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because his plea was not knowing, intelligent, or voluntary. Specifically, defendant contends:

> "Where defendant gave uncontradicted testimony at the hearing on his motion to withdraw his guilty plea that he was never told his agreement to a sentencing cap barred him from subsequently challenging his sentence on appeal, his plea was not entered knowingly, intelligently or voluntarily, and this Court should therefore reverse the order denying his motion to withdraw guilty plea."

¶ 21     Initially, we reject defendant's contention that his argument on appeal was not a claim of ineffective assistance of counsel such that he was required to establish the factors set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant argues:

> "The instant defendant does not make a *Strickland* claim on appeal. Rather, he argues his guilty plea should be withdrawn because it was entered based on a misapprehension of the law, specifically, that he did not understand his agreement to a sentencing cap precluded him from challenging his sentence as excessive on appeal."

However, the only evidence defendant presented in support of his claim was his own testimony that his plea counsel failed to explain the significance of the sentencing cap as it related to his ability to appeal his sentence. Defendant also relies heavily on the holding in *People v. Edmonson*, 408 Ill. App. 3d 880 (2011), a case involving a claim of ineffective assistance of counsel, in support of his argument.

¶ 22     Defendant does not argue that the court had a duty to advise him as to the effect of the sentencing cap on his ability to appeal his sentence. In fact, defendant acknowledges that Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) does not require courts to admonish a defendant pleading guilty as to the ramifications of a sentencing cap. Defendant contrasts Rule 402(a) with Federal Rule of Criminal Procedure 11(b)(1)(N), which requires federal courts to admonish defendants pleading guilty about "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). Defendant then argues:

> "Presumably, the presumption in Illinois is that trial counsel will advise his client about the impact of an agreement to a sentencing cap. Counsel's failure to provide his client with such information, then, is just as bad as counsel's mis-advising his client that he can challenge his sentence regardless of the sentencing cap."

¶ 23     Thus, defendant essentially argues that his plea counsel should have advised him as to the consequences of his sentencing cap on his appeal rights but failed to do so. Under these circumstances, we find that defendant's argument on appeal is a claim of ineffective assistance of counsel in substance if not form, and we will treat it as such.

¶ 24     "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.' " *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)

(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "A defendant does not have an automatic right to withdraw a plea of guilty. [Citation.] Rather, defendant must show a 'manifest injustice' under the facts involved." *People v. Baez*, 241 Ill. 2d 44, 110 (2011) (quoting *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009)). "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *People v. Hughes*, 2012 IL 112817, ¶ 32.

¶ 25 "A defendant might enter a guilty plea because of counsel's erroneous advice or omissions, but this fact alone does not destroy the voluntary nature of the plea." *Edmonson*, 408 Ill. App. 3d at 884. Rather, "[w]hether the defendant's plea was voluntary depends on whether the defendant had effective assistance of counsel." *Id.*; see also *People v. Pugh*, 157 Ill. 2d 1, 14 (1993). To establish a claim of ineffective assistance of counsel, defendant must show "(1) counsel's performance was objectively unreasonable; and (2) the defendant suffered prejudice as a result." *Edmonson*, 408 Ill. App. 3d at 884; *Strickland*, 466 U.S. at 687-88.

¶ 26 "To establish prejudice in the guilty plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Where, as here, a claim of ineffective assistance of plea counsel involves "a claim that [the defendant] relied on his counsel's erroneous advice about a consequence of his plea, the defendant ' "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." ' " *People v. Brown*, 2017 IL 121681, ¶ 48 (quoting *Valdez*, 2016 IL 119860, ¶ 29, quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). A defendant may not "satisfy the requisite prejudice prong based solely on the bare allegation that the defendant would have rejected the plea if his guilty-plea counsel had provided accurate advice." *Id.* ¶ 47; *Lee v. United States*, 582 U.S. ___, ___, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

¶ 27 Here, we find that defendant has failed to establish prejudice. That is, defendant failed to show that rejecting the plea would have been rational under the circumstances if counsel had advised him that he would be unable to appeal his sentence. If defendant had gone to trial on all six charges and been found guilty of both home invasion and armed robbery, he would have received multiple convictions. The convictions would not have merged under the one-act, one-crime doctrine because the offenses were carved from different physical acts and neither offense was a lesser included offense of the other. See *People v. Coats*, 2018 IL 121926, ¶ 12. Specifically, the home invasion charge was based on the act of unlawful entry into the Halliday residence, and the armed robbery charge was based on the act of taking property from the person or presence of Ronald and/or Mari. Arguably, both offenses contained the common act of threatening the use of force. However, " ' "[a] person can be guilty of two offenses when a common act is part of both offenses" ' " (*id.* ¶ 15 (quoting *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996), quoting *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983))) " 'or part of one offense and the only act of the other offense' " (*id.* ¶ 15 (quoting *Lobdell*, 121 Ill. App. 3d at 252)). Neither armed robbery nor home invasion is a

lesser-included offense of the other, as armed robbery contains an element that home invasion does not (namely, taking property from the person or presence of another), and home invasion has an element that armed robbery does not (namely, unlawful entry). 720 ILCS 5/18-2(a)(2), 19-6(a)(3) (West 2012).

¶ 28 Because defendant would have been subject to separate convictions on home invasion and armed robbery, defendant would have potentially been subject to permissive consecutive sentencing on the two offenses if the court found that it was necessary for protection of the public. 730 ILCS 5/5-8-4(c)(1) (West 2012). Taking the applicable firearm enhancements into consideration, defendant faced maximum sentences of 45 years' imprisonment for each offense. See 720 ILCS 5/18-2(a)(2), (b), 19-6(a)(3), (c) (West 2012); 730 ILCS 5/5-4.5-25 (West 2012). Thus, defendant would have been subject to a possible maximum aggregate sentence of 90 years' imprisonment on the two offenses. Although defendant had little to no criminal history, it is highly unlikely that he would have received a lower-range sentence considering the severity of the offenses. By accepting the plea agreement, defendant received only one conviction and a sentencing cap of 40 years' imprisonment, as opposed to a possible second conviction and potential 90-year sentence. Under these circumstances, defendant has failed to show that rejecting the plea would have been rational under the circumstances.

¶ 29 Because defendant could have received a maximum sentence of 90 years' imprisonment had he gone to trial, this case is distinguishable from the scenario posited by the Court in *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966-67, where "a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years."

¶ 30 We also find it significant that defendant failed to present any evidence that the ability to appeal his sentence played an important role in his decision to accept the plea agreement. In *Lee*, determining that the defendant had established that he was prejudiced by his plea counsel's erroneous advice that he would not be deported as a result of his plea agreement, the *Lee* Court found it significant that the defendant had demonstrated through his testimony and the testimony of his plea counsel that deportation was the determinative issue in the defendant's decision to accept the plea deal. *Id.* at ___, 137 S. Ct. at 1967-68. Similarly, in *Edmonson*, a case heavily relied upon by defendant, the defendant and his plea counsel testified that plea counsel erroneously advised defendant that he would be able to appeal a sentence entered under a plea agreement with a sentencing cap. *Edmonson*, 408 Ill. App. 3d at 883. In determining that the *Edmonson* defendant had established a claim of ineffective assistance of counsel, the court found it significant that "[t]estimony from [plea counsel] and defendant clearly showed that defendant relied on the misinformation when he entered his plea and that it played a key role in his decision." *Id.* at 886.

¶ 31 In the instant case, on the other hand, defendant testified only that his plea counsel failed to advise him that agreeing to the sentencing cap would preclude him from appealing his sentence. Defendant presented no evidence—not even his own testimony—that a belief that he would be able to appeal his sentence played a key role in his decision to accept the plea agreement.

¶ 32                                CONCLUSION

¶ 33          For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 34          Affirmed.