NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240934-U

NO. 4-24-0934

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 26, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| RAYONNA JONES-SNOW, | ) | No. 19CF304 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John M. Madonia, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the trial court's denial of defendant's motion to withdraw her guilty plea, holding defendant (1) forfeited her claim trial counsel rendered ineffective assistance by failing to advise her about her ability to appeal the length of her sentence, (2) failed to show her postplea counsel rendered ineffective assistance regarding sentencing-enhancement admonishments when she could not show prejudice based on any of the alleged deficiencies in representation, and (3) failed to show ineffective assistance of postplea counsel based on counsel's alleged failure to raise a plausible defense.

¶ 2    In January 2022, defendant, Rayonna Jones-Snow, entered a partially negotiated guilty plea to the aggravated kidnapping (720 ILCS 5/10-2(a)(6) (West 2018)) of Kathleen Camarano following a home invasion and armed robbery. Under the agreement, the State dismissed four additional charges and recommended a sentencing cap of 25 years' imprisonment. During the plea hearing, the trial court incorrectly advised defendant that, based on her prior juvenile criminal history, she was subject to an extended-term sentencing range of 6 to 60 years,

when defendant was actually subject to a nonextended maximum of 45 years. Defendant was also advised that she was subject to a 15-year firearm enhancement. The court sentenced defendant to 16 years' imprisonment.

¶ 3        Defendant's trial counsel filed a motion to withdraw the plea, and this court remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Jones-Snow*, 4-22-0993 (2023) (order). On remand, new postplea counsel filed an amended motion to withdraw the plea, alleging (1) defendant was incorrectly admonished that the 15-year firearm enhancement was mandatory instead of discretionary, (2) the plea was induced by promises relating to a future sentencing hearing that did not come to fruition, and (3) trial counsel failed to (a) advise defendant of sentencing enhancements or provide guidance about possible penalties and the different outcomes that could occur, (b) advise defendant of the meaning of a sentencing cap and a partially negotiated plea and the pros and cons of pleading guilty, and (c) offer evidence in mitigation at sentencing. Postplea counsel neither alleged the admonishments concerning the sentencing range and extended-term eligibility given at the plea hearing were incorrect nor included specific allegations concerning the ability to appeal the sentence. The trial court denied the motion.

¶ 4        On appeal, defendant argues (1) trial counsel rendered ineffective assistance when counsel failed to advise her that she could not challenge the length of her sentence on appeal and (2) postplea counsel rendered ineffective assistance for failing to argue in the amended motion to withdraw that (a) the trial court erred in admonishing defendant that she was extended-term eligible, (b) trial counsel was ineffective for failing to advise defendant she was not extended-term eligible, and (c) defendant had a plausible defense because Camarano did not identify defendant and had described the perpetrators of the crimes as males.

¶ 5    We affirm.

¶ 6                    I. BACKGROUND

¶ 7    In April 2019, following transfer from the juvenile court, defendant, who was approximately a week shy of her eighteenth birthday at the time of the crimes, was indicted on charges of home invasion (720 ILCS 5/19-6(a)(3) (West 2018)), residential burglary (*id.* § 19-3(a)), armed robbery (*id.* § 18-2(a)(2)), theft (*id.* § 16-1(a)(3)), and aggravated kidnapping (*id.* § 10-2(a)(6)). The home invasion, armed robbery, and aggravated kidnapping charges each alleged defendant committed the crimes while armed with a firearm.

¶ 8    At the hearing on the motion to transfer the case from juvenile court, Sergeant Michael Mazrim with the Springfield Police Department testified he responded to the scene of the home invasion and investigated the crimes. Camarano told officers she was dog sitting for the homeowners and woke up at around 4 a.m. to the doorbell ringing. When Camarano answered, two people forced their way into the home. One person was wearing a hooded sweatshirt cinched tight around the face and was armed with a handgun. The people threatened Camarano and a dog with the gun. The people were in the house for approximately 45 minutes and took multiple items, including a television and various electronics. The person with the cinched sweatshirt and gun then forced Camarano to drive Camarano's car to an automated teller machine (ATM) while the other person followed in a silver car, which later was revealed to belong to defendant's mother. Based on threats from the people, Camarano withdrew money from the ATM. Camarano dropped the person with the gun off at another location and then was able to call the police.

¶ 9    Defendant's mother, Priscilla Snow, told police defendant's coconspirator had arrived at Snow's home with her car and there were several large items in it, such as a television, but Snow was not involved in the crime. Defendant then arrived or was found nearby and said

- 3 -

she had lost her phone. Snow drove defendant and the coconspirator back to the scene of the home invasion, apparently to look for the phone. Defendant kicked in the door to the home in order to enter it.

¶ 10     Snow left, and the police arrived while defendant was still in the home. A video from the home's pet-monitor cameras depicted her wearing the hooded sweatshirt, "hobbling," and rolling on the ground outside of the home, as she broke her ankle when she attempted to flee by jumping from a second-story balcony. Defendant was also wearing the sweatshirt and had $1,100 and six to eight credit cards bearing the name of the homeowner when she was taken into custody.

¶ 11     After defendant was arrested and transported to the hospital, Mazrim searched the area. Various items were found in the backyard, including a 9-millimeter cartridge, an unspent cartridge case, a tennis shoe, several credit cards or gift cards, and a piece of foreign currency. Mazrim described it as a "trail" of items leading from a door of the residence to where defendant was found.

¶ 12     Mazrim interviewed defendant, who initially told him she had a sexual relationship with Camarano and had gone to the house to retrieve a phone. However, when Mazrim told defendant there were video and audio recordings from pet-monitor cameras located inside of the home showing what actually happened, defendant admitted to the crimes. Mazrim confirmed the videos existed and corroborated Camarano's version of the events. Video from the ATM location also corroborated Camarano's version of the events. A video also showed the person with the gun wearing a hooded sweatshirt cinched tight around the face. Camarano, who described the two people who robbed her, including the person wearing the sweatshirt, as Black males, was unable to identify defendant at the scene or in a photo lineup. A firearm was never

recovered.

¶ 13                    A. Guilty Plea Proceeding

¶ 14        On January 19, 2022, defendant pleaded guilty to aggravated kidnapping, and the
State dismissed the remaining charges. The agreement included that the State would recommend
a 25-year sentencing cap.

¶ 15        At the plea hearing, the following colloquy occurred:

              "[THE COURT]: It's the Court's understanding, [defendant], that after all
        this time you're convinced that the best way to resolve your charges here today is
        to accept the partial agreement offered by the State to plead to one count, Count
        V, which is a charge of aggravated kidnapping. It is an enhanced Class X felony
        based on your prior criminal history. It would be a six minimum to 60-year term
        in the Illinois Department of Corrections, and the State could seek for the Court to
        impose an otherwise mandatory enhancement based on the use of a firearm in this
        offense and enhance your case to a minimum of 15 years. And if the Court would
        agree with them ultimately at the time of your sentence, the minimum sentence
        the Court could impose is not six, it would be 21. The maximum sentence would
        be not 60, it would be 75. And any sentence which would be mandatory would be
        followed by three years of supervised release. Any sentence that is imposed based
        on truth in sentencing would be served at 85 percent. There is a new provision in
        the law that allows you to seek release. If you are still in custody after ten years of
        serving a sentence, you could petition to have the remainder of your sentence
        vacated or at least released from the penitentiary after serving that time. That is all
        subject to further sentencing to be held in this case. Understood?

- 5 -

[THE DEFENDANT]: Are you talking to me?

THE COURT: I am.

[THE DEFENDANT]: Yes, it's understood.

THE COURT: All right. Do you understand everything that I just said?

[THE DEFENDANT]: Yes, I do.

THE COURT: And is it your intention then to continue with this plea and then accept responsibility to Count V and have a Sentencing Hearing at some point after the Court has received a report about your history and about your life and your background, right?

[THE DEFENDANT]: Yeah.

THE COURT: And then your lawyer could argue for the minimum sentence that your lawyer believes is appropriate. The State has agreed to cap their recommendation at 25 years in the Illinois Department of Corrections.

[THE DEFENDANT]: Okay.

THE COURT: Court could sentence somewhere in between potentially 6 to 25. Technically, the Court could go over the State's range. I've never done that in the history of my career. I don't know why I would start with your case. All right?

[THE DEFENDANT]: Okay.

THE COURT: You can rest assured that the State's maximum would be equal to the Court's maximum if the Court ever got into that range at all, understood?

[THE DEFENDANT]: Okay. Yes, sir.

THE COURT: All right. Knowing all of that, is it your intention to continue with this plea and plead guilty to Count V here today?

[THE DEFENDANT]: Uhm, yeah, yeah."

Defendant also stated she understood her other option was to go to trial, where the State would likely seek a substantially higher sentence.

¶ 16		Defendant told the trial court there were no issues with her mental health preventing her from understanding the proceedings. She said she took medications but could not identify what they were for. The court admonished defendant a second time about the sentencing range, stating:

"[B]ecause of representations that will be presented about your prior criminal history, you're eligible to be sentenced from 6 to 60 years in the Illinois Department of Corrections. Based on potential for a sentencing enhancement of 15 years due to a firearms allegation contained in your charge, the Court could extend your minimum sentencing range to 21 years and your maximum sentencing range of 75 years if it applied."

The court also repeated that defendant could seek release after 10 years. The following colloquy then occurred:

"THE COURT: Do you have any questions about the charge to which you're pleading guilty here today?

[THE DEFENDANT]: Yes, I do.

THE COURT: I will hear your questions, ma'am.

[THE DEFENDANT]: Basically what I'm saying is this, this is the only— I'm saying is this the only—I know this is basically the only option I got left is to

plead out, but is this charge necessary?

[DEFENSE COUNSEL]: Listen, there's always another option, it's called a trial.

[THE DEFENDANT]: I understand that.

[DEFENSE COUNSEL]: Okay.

THE COURT: And I understand your concern, and that's kind of why I started—

[THE DEFENDANT]: Yeah, I understand that. I'm not saying I didn't listen to anything that you're saying. But I'm just saying, you know, like what I did was as a juvenile, okay. Like, —

[DEFENSE COUNSEL]: This will come out at sentencing.

[THE DEFENDANT]: I understand. What I'm saying, I don't want to seem like I'm not listening to what they're saying, but what I'm saying, at the same time, I want testimony to let them know that I feel like this, I just feel like I'm getting bombarded. I mean, ain't nobody forcing me to do nothing. It's all about taking responsibility, and that's me growing as a person.

But at the same time I don't want to feel like, *** I just don't want to get railroaded because that's what happened as a juvenile. That's the only reason that my juvenile history the way it is because of this. I was young and dumb and *** naive. And I chose to get it over with ***  because not taking everybody through everything. But at the same time I feel that I just—now that I'm in adult court it's getting thrown in my face when, *** like—I don't know.

[DEFENSE COUNSEL]: You want to take a minute and talk in the back?

THE COURT: [Defendant], that's not the first time I've heard someone sitting in your position who suggests that they're getting doubly punished for a sentence they've already served, time they've already done, a sentence they've already accepted responsibility for, accepted responsibility for and wish now that they would have maybe fought harder against those charges knowing what you do as you sit there. But you have to hope that your attorney is going to argue on your behalf that it is mitigating and that you shouldn't get "railroaded" for a past offense. Those are all arguments that this Court will consider when it sentences you, I guarantee you that.

The thing that we cannot, your attorney or the Court, is negotiate away the charges if there's a factual basis to support the plea.

[THE DEFENDANT]: Yeah, yeah.

THE COURT: And I understand you get it, I'm just—

[THE DEFENDANT]: Yes, sir.

THE COURT: I'm just making sure the record is clear that I've tried to explain as best we can why the State is making this offer with this charge, that's their job.

[THE DEFENDANT]: I understand.

THE COURT: And if the facts fit, I mean, yes, they have the ability to use discretion, they have the ability to allow you to plead to a lesser charge to lesser impact, but they also think they have a community and a victim to represent under some drastic circumstances that's going to require them to make some powerful arguments as to why you should be incarcerated. Believe me, you're going to hear

some powerful arguments at the sentencing as to why you should be locked up. I also expect to hear some powerful arguments why you were young, why you were an accomplice. At the end what I can guarantee is that I'm going to render a fair and just sentence in this case. I honestly believe that. I always have and I always will. Okay?

[THE DEFENDANT]: Okay.

THE COURT: So, wherever the chips may fall, it will be somewhere in that sentencing range. I have to do that. I'm going to take it all in. And if that's what you choose to do, continue with this plea, I'm going to hear it all. And at the end you'll end up accepting the sentence, I think might be able to explain why it's happening and then you'll still have a right to appeal if it all goes really, really south. Understood?

[THE DEFENDANT]: Yes, sir."

¶ 17 Following a recess for defendant to discuss the matter further with counsel, defendant stated she wished to plead guilty. The trial court admonished defendant of her right to a trial and her waiver of that right, and it asked questions to determine whether the plea was voluntary. The following factual basis was given for the plea:

"[O]n March 16th of 2019, the Springfield Police Department *** responded to a reported home invasion.

The Defendant was found injured on scene.

The victim was located and reported two intruders broke into a home that she was house-sitting and held her at gunpoint while they burglarized the home. She was then compelled to travel by a vehicle with the Defendant to a bank to

- 10 -

withdraw some cash. And she was transported to the bank under threat of force.

The Defendant admitted her role. And when she was found by law enforcement, she was found with live ammunition. These events occurred in Sangamon County."

Defendant stipulated the State could produce witnesses to support the factual basis. Defendant pleaded guilty, and the court accepted the plea.

¶ 18                                    B. Sentencing

¶ 19        The presentence investigation report (PSI) showed defendant's criminal behavior began when she was 12 years old. She had previously been committed to the Illinois Department of Corrections as a juvenile for Class 3 felony theft and Class 1 felony aggravated robbery while armed with a firearm. The PSI reported difficulties defendant had growing up and in school, and reported defendant had medical, mental health, and substance abuse issues.

¶ 20        At the sentencing hearing, the State provided details of the crime, including that defendant pointed a gun at Camarano and threatened to kill Camarano and a dog. At one point, a dog was picked up by the head or throat and a countdown was started, indicating either the dog or Camarano would be shot. Evidence of defendant's involvement in another armed robbery was also presented. Victim impact statements described the various psychological and emotional harms caused by the crimes and a physical injury to a dog. Defense counsel did not offer evidence in mitigation. Defendant gave a statement in allocution, in which she apologized to the victims and her family and expressed remorse. Defendant specifically stated she took responsibility for her actions. Defendant stated she was sorry and said, "And I'm not just saying this because I'm facing 25."

¶ 21        The State asked the trial court to apply the firearm enhancement and sought a

sentence of 25 years' imprisonment. The State did not seek an enhancement based on defendant's previous juvenile criminal history. Defense counsel referenced defendant's age and difficult childhood, as shown in the PSI, and asked for a 10-year sentence. The court addressed the aggravating and mitigating factors at length and sentenced defendant to 16 years' imprisonment. The record shows defendant then had an emotional reaction, stating, "Christ. Oh, God," and "I can't. I can't do 16 years. I can't. Oh, my God. Mom, I can't. I can't."

¶ 22     The trial court admonished defendant she had 30 days to appeal and that, if she wished to challenge the sentence, she had 30 days to file a motion to reconsider. Defendant continued to make emotional statements indicating displeasure with the sentence.

¶ 23          C. Motions to Withdraw the Plea Filed by Trial Counsel

¶ 24     On April 26, 2022, trial counsel filed a motion to withdraw the plea, alleging defendant instructed counsel to file the motion and that she contended "she entered into this plea absent a knowing, intelligent, and voluntary waiver of rights." No specific details were provided.

¶ 25     On November 4, 2022, trial counsel filed an amended motion to withdraw the plea or reconsider the sentence, contending defendant entered the plea "absent a knowing, intelligent, and voluntary waiver of her rights" and "the interests of justice require that the cause proceed to [a] jury trial." The motion did not provide specific details and stated defendant had been advised of her appeal rights.

¶ 26     At the hearing on the motion, trial counsel noted defendant was informed by the trial court at the guilty plea hearing of the possible punishments. However, counsel argued that, based on defendant's reaction to the sentence, he was not sure she knowingly understood the sentencing range. Counsel argued that, based on defendant's reaction at sentencing, the court should allow defendant to withdraw the plea so she could have a fitness evaluation.

¶ 27 The State noted defense counsel had not pointed to any defect in the admonishments at the plea hearing and there was no indication at the time of the hearing that defendant was unfit. The State argued, "It's clear [defendant] was disappointed in the outcome, and it's clear she hoped for a different outcome. But her reaction alone should not be a basis to withdraw a plea to examine fitness when up to that point no one had any concerns about her fitness."

¶ 28 The trial court denied the motion, finding the proceedings showed defendant was fit to enter the plea and the plea was knowing and voluntary. In doing so, the court stated:

"I am also absolutely convinced that you were aware that the State's recommendation was capped at 25 years and that not only could you receive a sentence up to and including that 25 years, but the Court in its admonishments will tell you that it could technically go over the sentencing range if the Court thought that was appropriate, which the Court clearly didn't in this situation.

Under the totality of the circumstances, I believe you entered into a knowing and voluntary plea, that you held a sentencing hearing where you asked for some mitigation, you gave a statement in allocution. The Court heard it all. But the Court also heard a very involved role that you played in the crime. And ultimately that caused this Court not to impose an enhancement that the Court could have and was urged to by the State.

But to give you a sentence probably in excess of what you hoped, less than 15 years maybe is what you were hoping for, and I don't think 16 was anywhere excessive or anything out of the realm of reasonableness that you should have expected under these circumstances. Buyer's remorse is no way to proceed legally

in these circumstances. And simply to look at your reaction and see the disappointment is not a realistic fact that this Court will consider in determining that your plea was not voluntary."

¶ 29    Defendant appealed, and this court remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *Jones-Snow*, 4-22-0993 (2023) (order).

¶ 30        D. Motion to Withdraw the Plea filed By Postplea Counsel

¶ 31    On remand, new postplea counsel filed a new motion to withdraw the guilty plea. Counsel alleged defendant was incorrectly admonished on multiple occasions that the 15-year firearm enhancement was mandatory instead of discretionary. Counsel also alleged facts pertaining to truth in sentencing admonishments and eligibility for parole after 10 years.

¶ 32    Postplea counsel further alleged there were no conversations with defendant's trial counsel regarding sentencing enhancements or guidance about possible penalties and the different outcomes that could occur. Counsel also alleged defendant was advised that a plea would be in her best interest, but no further discussions occurred regarding the strength of the State's case or the reasons she should plead, the pros and cons of a plea, or what a cap or a partially negotiated plea was. Counsel noted defendant felt " 'bombarded' " during the plea hearing and "did not 'want to get railroaded' " based on her juvenile record. Counsel further noted trial counsel did not offer evidence in mitigation at sentencing.

¶ 33    Counsel noted the admonishments concerning the sentencing range and extended-term eligibility given at the plea, but she did not allege those admonishments were incorrect. Ultimately counsel stated:

"[Defendant] contends that her [trial] counsel was ineffective in failing to adequately explain the terms of the plea, minimum and maximum exposure, the

firearm enhancement, the alternatives of trial or a fully open plea, the evidence against her, the significance of a truth-in-sentencing sentence in the Department of Corrections, and the plans for mitigation evidence at sentencing. Further, her plea was induced by assurances relating to the depth and content of a future sentencing hearing that did not come to fruition. [Defendant] received representation that fell below an objective standard of reasonableness, and but for plea counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial."

¶ 34    Postplea counsel included defendant's affidavit. Defendant averred she was diagnosed with various mental illnesses and had an individualized education program when she was in school. She averred in part that trial counsel did not discuss the discretionary firearm enhancement with her and she did not independently know what that was or what the sentencing range for her charges would be. She averred that, once the possibility of parole after 10 years was raised, trial counsel told her she was not going to serve more than 10 years. She averred, if she had adequate information, she would not have pleaded guilty. She made no specific allegations concerning extended-term sentencing or advice regarding whether she could appeal her sentence.

¶ 35    On July 2, 2024, a hearing was held on the motion. Defendant testified about various educational and mental health issues affecting her development as a child and teenager. She also testified about various related behavioral issues she had as a teenager. Defendant said trial counsel told her he would raise those issues at sentencing, but he did not do so.

¶ 36    When asked if she was familiar with the penalty structure of the charges she faced, defendant stated, "not necessarily. But I know it's not, you know, good, so—." Postplea

counsel asked defendant, "Was there a lot of discussion about what your possible sentence could be throughout this case?" Defendant replied, " [Y]es ma'am."

¶ 37        Defendant testified she met with her trial counsel "probably four times" at the jail and spoke to him when they went to court. Trial counsel would also communicate with defendant's mother. Defendant said that she had to ask her mother about her case because she had trial counsel's numbers, "but he never answered." Defendant did not remember trial counsel reviewing discovery with her, and she did not feel that she had gotten enough of a look at what the State's evidence was against her.

¶ 38        Defendant said trial counsel did not explain what her options were, but she said she was aware that at one point, the State offered 25 years in prison. She said the State then offered 17 years, and trial counsel told her she should plead guilty because "it looks really bad" and they kept bringing up her coconspirator. Defendant stated, "[O]ther than that, he didn't give me any insight on what is for the future." Defendant stated she did not understand what a "cap," a "fully negotiated plea," or an "open plea" were. When asked if she understood the difference between those options and going to trial, defendant said, "Not necessarily." She said the only insight she got about the plea was "that the judge would say something," and she "felt like that was because [the judge was] fair."

¶ 39        Defendant testified based on paperwork from an unidentified person or entity, she thought the sentencing range for aggravated kidnapping was 6 to 30 years. When asked about the possibility of an extended term being applied based on her juvenile history, she stated "Not that I know of." Defendant indicated she did not understand what her sentence would be if she served 85%, the "truth in sentencing" provisions, and how that could impact her eligibly for prison programming. Defendant remembered the judge admonishing her about parole eligibility.

However, she stated, "[A]fter [trial counsel] mapped out sentencing, he told my mom and me I wasn't doing more than ten years. So, in my mind, *** I didn't quite understand." Defendant testified she did not have an adequate understanding of the facts and law to enter a plea in the case, and she would have gone to trial if her counsel had provided better advice. However, on cross-examination, defendant admitted she understood the maximum sentence under the plea would be 25 years.

¶ 40        The trial court denied the motion to withdraw the plea, stating,

"I think the record is clear in the case. The Court was very aware of any academic deficiencies, potential intellectual deficiencies, comprehension issues that [defendant] would have had during relevant portions of the proceedings at issue in this hearing. That's why the Court took extensive time with [defendant] at multiple hearings, adjourning the proceedings, stopping proceedings, allowing for further conferences, all with an understanding that the Court is going to engage [defendant] and understand what her desires were in regards to these proceedings.

And this isn't a case of closely balanced evidence. Nor is it a case of a lack of intent where you see these like felony charges that are trumped up by somebody who is just in the get away car not knowing that the person inside is holding a gun to someone's head, robbing them of all their possessions. That's not what happened here either. You were actively engaged in the violent commission of this offense. To claim now that you would or potentially could have gone to trial with the evidence that you were facing seems implausible.

You acknowledged on the record before this Court the importance of pleading guilty and accepting responsibility.

And, furthermore, when I weigh your academic deficiencies and intellectual challenges, I also balance that with your prior history in the system. And you were very keen on what it meant to be sentenced. You had been sentenced before. And in your opinion you had been sentenced unfairly, and that weighed on you, and it impacted a lot of your decision-making during these proceedings. And you questioned accurately what was taking place in your proceedings and the impact your decisions were going to have. And you reflected and were given plenty of time to reflect on the impact your decisions would have.

I mean, to say now that witnesses weren't called on your behalf and that you wouldn't have pled guilty if this evidence would have been presented, that belies the circumstances. And if your attorney promised that the Court would be made aware of the issues that were you concerned about, the Court was made of the issues you were concerned about. There was a very thorough [PSI] prepared in your case that thoroughly documented your history and your concerns, all of which was considered by this Court.

I cannot find that your attorney advising you to plead guilty, telling you it was in your best interests to plead guilty, under the nature and circumstances of both the factual basis for the charges but also the concessions made by the State, the ability of the Court to exercise some discretion, which the Court did, all of which this Court is of the firm belief was done with your understanding conclusively of what was at stake.

When you sat before this Court and plead [*sic*] guilty to Count V, you knew exactly what your risks were, what the Court's sentencing options were,

what the State's recommendation was going to be. What you didn't know was what the Court's ultimate sentence would be. And for you to tell the Court now that you pled guilty because you thought you would never get sentenced to more than ten years or spend more than ten years in prison, you had ample opportunity—if you truly believe that, you had ample opportunity to bring that to the Court's attention when the Court asked you if you had any questions, which the Court did several times. Do you have any questions about the nature of your plea, the possible penalties the Court could impose. ***

So, it is not ineffective assistance of counsel. His conduct did not drop below the objective standard of reasonableness, advising you to plead guilty and making sure the [PSI] met the needs to demonstrate mitigation, to obtain concessions from the State, to have other charges dismissed."

¶ 41    This appeal followed.

¶ 42                    II. ANALYSIS

¶ 43    On appeal, defendant argues (1) trial counsel rendered ineffective assistance when counsel failed to advise her that she could not challenge the length of her sentence on appeal and (2) postplea counsel rendered ineffective assistance for failing to argue in the amended motion to withdraw that (a) the trial court erred in admonishing defendant that she was extended-term eligible, (b) trial counsel was ineffective for failing to advise defendant she was not extended-term eligible, and (c) there was the existence of a plausible defense because Camarano did not identify defendant and described both intruders as males. Thus, defendant seeks a remand either to be allowed to withdraw her plea or for new postplea proceedings.

¶ 44            A. Ineffective Assistance of Trial Counsel and Forfeiture

- 19 -

¶ 45 Defendant first contends that she should be allowed to withdraw her plea because trial counsel was ineffective for failing to inform her that she would not be able to challenge the length of her sentence on appeal. The State argues defendant could and did challenge the sentence by filing a motion to withdraw the plea and also forfeited the issue by failing to raise it in any of her motions to withdraw the plea. We agree.

¶ 46 Rule 604(d) provides, in part:

"No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment.

No appeal shall be taken upon a negotiated plea of guilty challenging the sentence as excessive unless the defendant, within 30 days of the imposition of sentence, files a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. Apr.15, 2024).

Rule 604(d) further provides, "Upon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall be deemed waived." *Id.*

¶ 47 Here, defendant did not raise any issue concerning her ability to appeal the length of her sentence in any of her motions to withdraw the plea, nor did she ever argue that trial counsel failed to advise her about her ability to appeal following her guilty plea. In particular, defendant's third motion to withdraw her plea, filed by new postplea counsel, who would have been able to raise issues of ineffective assistance of trial counsel, made no mention of the issue.

¶ 48　　　　Defendant points to generic references to trial counsel's overall advice to argue she raised the issue, but we find such generic references insufficient to preserve the issue. Thus, defendant forfeited her argument concerning trial counsel's advice regarding whether she could appeal the length of her sentence. Defendant has also not argued that plain error applies, thus forfeiting any plain error argument. See *People v. Nieves*, 192 Ill. 2d 487, 503 (2000) (finding that the failure to argue "that the evidence was closely balanced [or that] the error is so severe that it must be remedied to preserve the integrity of the judicial process" forfeited plain error on appeal); see also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 49　　　　　　　　　　B. Ineffective Assistance of Postplea Counsel

¶ 50　　　　Although we find defendant forfeited her argument regarding trial counsel's advice to her concerning her ability to appeal, we note defendant, although not clearly raising the matter, also suggests postplea counsel was ineffective for failing to adequately address the issue and raises three additional issues of alleged ineffective assistance of post plea counsel. Those issues are not forfeited. See *People v. Stevenson*, 2020 IL App (4th) 180143, ¶ 11 (allowing a defendant to raise a claim of ineffective assistance of counsel who filed the motion to withdraw the plea for the first time on appeal). Accordingly, we address those claims. We conclude defendant cannot show prejudice from any of the alleged instances of ineffective assistance of counsel, including her forfeited claim of ineffective assistance of trial counsel.

¶ 51　　　　A guilty plea must be voluntary and intelligent. *People v. Blankley*, 319 Ill. App. 3d 996, 1007 (2001). However, a defendant has no absolute right to withdraw a plea of guilty. *People v. Jamison*, 197 Ill. 2d 135, 163 (2001). Rather, the defendant must show a manifest injustice under the facts involved in order to obtain leave to withdraw the plea. *Id.* The defendant bears the burden of showing the necessity for withdrawal. *People v. Canterbury*, 313 Ill. App. 3d

914, 917 (2000). We review the decision to grant or deny a motion to withdraw a plea for abuse of discretion. *People v. Glover*, 2017 IL App (4th) 160586, ¶ 29.

¶ 52  Withdrawal is appropriate if the guilty plea was entered through a misapprehension of the facts or of the law and the defendant had a defense worthy of consideration or there is doubt of the defendant's guilt and the ends of justice would be better served by submitting the case to a trial. *People v. Staple*, 233 Ill. App. 3d 8, 10 (1992). Another basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice before entering the plea. *Glover*, 2017 IL App (4th) 160586, ¶ 39. However, the fact of erroneous advice by counsel alone does not destroy the voluntary nature of the plea. *Id.* Rather, the defendant must have been denied the effective assistance of counsel. *Id.*

¶ 53  To establish that counsel was ineffective, a defendant must satisfy the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 688 (1984); see *People v. Valdez*, 2016 IL 119860, ¶¶ 13-14. Counsel's conduct is deficient under *Strickland* if counsel fails to ensure that the defendant entered the plea voluntarily and intelligently. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). To establish prejudice, a defendant must show a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *People v. Manning*, 227 Ill. 2d 403, 418 (2008). The defendant bears the burden of establishing both prongs of the *Strickland* test. *People v. Jones*, 219 Ill. App. 3d 301, 305 (1991). A failure to establish either prong of the *Strickland* test precludes finding ineffective assistance of counsel. *People v. Peterson*, 2017 IL 120331, ¶ 79. Claims that are not substantiated in some way by factual allegations must fail. *Jones*, 219 Ill. App. 3d at 305. Likewise, claims that the

record refutes cannot succeed. *People v. Strickland*, 363 Ill. App. 3d 598, 607 (2006). We review *de novo* whether the defendant was denied effective assistance of counsel. See *People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 54 The standard required to establish prejudice based on a claim of ineffective assistance of plea counsel differs depending on the type of claim raised. See *People v. Brown*, 2017 IL 121681, ¶¶ 40-46. When an ineffective assistance claim is related to a defendant's defense strategy or the chance of acquittal, the defendant must raise a claim of innocence or demonstrate the existence of a plausible defense to establish prejudice. *Id.* ¶ 45. Conversely, when the ineffective assistance claim involves counsel's alleged failure to advise a defendant about the consequences of pleading guilty, the defendant must show that a decision to reject the plea bargain would have been rational under the circumstances. *Id.* ¶ 40. Under the second standard, which applies in this case, a court must consider the relevant circumstances surrounding the guilty plea to assess prejudice. *Id.* ¶ 48. While the existence of a plausible defense is not required under the second standard, a plausible defense may make a showing of prejudice stronger. *People v. Deltoro*, 2015 IL App (3d) 130381, ¶ 24.

¶ 55 A lack of prejudice may also be shown when the trial court's admonishments under Illinois Supreme Court Rule 402 (eff. July 1, 2012) were sufficient to overcome any prejudice created by the claims of ineffective assistance. See *People v. Hall*, 217 Ill. 2d 324, 339 (2005). The purpose of such a colloquy is to ensure that a defendant's guilty plea is not accepted unless it is intelligent and voluntary. *People v. Horton*, 250 Ill. App. 3d 944, 951 (1993). This purpose would hardly be served if a defendant could state on the record that his plea was voluntary and then turn around and claim that it was involuntary, as it would reduce the colloquy to a meaningless exercise. See *People v. Robinson*, 157 Ill. App. 3d 622, 629 (1987).

"[E]xhaustive admonitions cannot be disregarded as merely a ritualistic formality." *People v. Ramirez*, 162 Ill. 2d 235, 245 (1994). Thus, "a defendant cannot be rewarded for disregarding the specific admonitions of the court." *People v. Radunz*, 180 Ill. App. 3d 734, 742 (1989). If a plea of guilty is to have any binding effect or is to be given any subsequent weight, extensive and accurate admonishments given by a trial court must be held to overwhelm a defendant's assertion that he or she entered a plea involuntarily. *Robinson*, 157 Ill. App. 3d at 629. Where a defendant has been meticulously advised of the consequences of the plea and has affirmatively acknowledged an understanding of those consequences, the defendant may not claim error on appeal merely because he or she is dissatisfied with the length of the sentence. *People v. Spriggle*, 358 Ill. App. 3d 447, 455 (2005).

¶ 56        We note the State concedes defendant was incorrectly admonished that she was eligible for extended-term sentencing. However, we determine defendant cannot show prejudice on any of her claims of ineffective assistance of counsel because she has not shown a decision to reject the plea would have been rational under the circumstances.

¶ 57        Under the plea agreement, five additional charges against defendant were dismissed, two of which alleged defendant committed the acts while armed with a firearm. In particular, if defendant had gone to trial on all six charges and been additionally found guilty of the remaining charges, at least some of the convictions would not have merged under the one-act, one-crime doctrine because the offenses were carved from different physical acts and neither offense was a lesser-included offense of the other. See *People v. Johnson*, 2018 IL App (3d) 150679, ¶ 27 (citing *People v. Coats*, 2018 IL 121926, ¶ 12). In particular, the home invasion charge was based on the act of unlawful entry into the home where Camarano was dog sitting, the aggravated kidnapping charge was based on the act of transporting Camarano from

one place to another against her will, and the armed robbery charge was based on the act of taking property from Camarano. None of the charges are lesser-included offenses of the others, as they each contain elements that the others do not.

¶ 58 Because defendant would have been subject to separate convictions, she would have potentially been subject to permissive consecutive sentencing if the trial court found that it was necessary for protection of the public. 730 ILCS 5/5-8-4(c)(1) (West 2022). Under the plea agreement, at a minimum, defendant faced a statutory maximum of 45 years' imprisonment, consisting of 30 years' imprisonment for the Class X offense and 15 years' imprisonment for the firearm enhancement. 720 ILCS 5/10-2(a)(6), (b) (2022); 730 ILCS 5/5-4.5-25(a) (2022). But she potentially faced much greater than that were she to be convicted on the remaining charges and consecutive sentences were imposed, although we recognize the imposition of a *de facto* life sentence over 40 years would be unlikely given that defendant was a juvenile when the crime was committed. See *People v. Wilson*, 2023 IL 127666, ¶¶ 26-44 (discussing the law of sentencing juvenile offenders as adults); 730 ILCS 5/5-4.5-105 (West 2022) (addressing sentencing for individuals who were under the age of 18 at the time of the crime).

¶ 59 Meanwhile, defendant had a significant juvenile criminal history and was a particularly active participant in the crimes, which included violence to an animal and significant threats of violence to Camarano. Considering the severity of the offenses, it would be unreasonable for defendant to expect to receive a lower sentence had she gone to trial. By accepting the plea agreement, defendant received only one conviction and a sentencing cap of 25 years' imprisonment, as opposed to possible additional convictions and a potentially longer sentence. The trial court made clear to defendant in its admonishments that it had no intention of sentencing her to a term over the cap. Indeed, the court sentenced defendant to a term well below

the cap that did not include the firearm enhancement. "Under these circumstances, defendant has failed to show that rejecting the plea would have been rational under the circumstances." *Johnson*, 2018 IL App (3d) 150679, ¶ 28.

¶ 60    Nevertheless, defendant asserts the trial court's incorrect admonishment that she might face a maximum term of 60 years influenced her decision to enter the plea and that her status as a juvenile potentially facing a *de facto* life sentence was additionally an important factor. But the record does not contain evidence to support those arguments. Defendant failed to present any evidence that the incorrect admonishments about eligibility for an extended term played an important role in her decision to accept the plea agreement, especially in light of the court's admonishments concerning the cap and the fact that the State never sought the enhancement and the court clearly did not apply it. While defendant made bare assertions that she would not have pleaded guilty and would have gone to trial had trial counsel better advised her, she provided no specific details for her reasoning. To the extent defendant argues postplea counsel was ineffective for failing to elicit such details, we cannot find deficient assistance or prejudice without evidence in the record to support the claim, especially when the record before us shows a lack of prejudice from any alleged failings of counsel.

¶ 61    Further, despite defendant's claims that she did not understand the cap and her indications she believed she was going to receive a 10-year sentence, the trial court extensively explained the effect of the agreement to her. Defendant told the court she understood the cap and the possibility of seeking parole after 10 years. During her statement in allocution, defendant even referred to the potential that she could be sentenced to 25 years. Thus, not only does the record lack support for her claim that she misunderstood the admonishments to mean she would receive a 10-year sentence, it also affirmatively rebuts it. When the court denied the motion to

withdraw the plea, it noted its admonishments and defendant's stated understanding of them. As a result, the court found defendant understood what was at stake when she pleaded guilty. That determination was not an abuse of discretion.

¶ 62                              C. Lack of a Plausible Defense

¶ 63          Finally, defendant argues postplea counsel rendered ineffective assistance by failing to allege she had a plausible defense. Defendant argues evidence from the juvenile transfer hearing shows that Camarano never identified her and identified the perpetrators as male. However, the record from that hearing shows the evidence against defendant was overwhelming. Defendant was identified by the police as the person wearing the hooded sweatshirt cinched tightly around her face in the videos. Defendant was also wearing that sweatshirt when she was arrested and had items obtained during commission of the crimes. Most important, defendant admitted she committed the crimes. Then, at the plea hearing, defendant stipulated the State could prove the factual basis showing she committed aggravated kidnapping. Thus, the record does not support defendant's argument of a plausible defense, and postplea counsel's representation was not deficient in declining to raise it. Further, as previously discussed, defendant could not show prejudice. The evidence against defendant was overwhelming. It would not have been rational under the circumstances to reject the plea bargain and go to trial to raise the defense that Camarano could not identify defendant, when defendant was clearly the perpetrator of the crimes and had admitted that.

¶ 64          In sum, defendant cannot show ineffective assistance of counsel because a decision to reject the plea agreement would not have been rational under the circumstances, nor did she show the existence of a plausible defense. Accordingly, the trial court correctly denied the motion to withdraw the plea.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.